### EARL W. BAKER & CO. et al. v. MAPLES et al.

No. 22344. Opinion Filed Feb. 9, 1932.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for petitioners.

Smith & Smith, for respondents.

RILEY, J. Earl W. Baker & Company,

employer, and United States Fidelity & Guaranty Company, as insurance carrier, bring this action against P. L. Maples and the State Industrial Commission to review an award in favor of Maples under the Workmen's Compensation Law.

From the record it appears that Earl W. Baker & Company, on and prior to March 19, 1927, were engaged in constructing a filter plant at Antlers, Okla., and that the claimant, Pascal L. Maples, was in their employ as a laborer in said work. On the latter date, while claimant was so employed and while digging a ditch in connection with said plant, the wall caved in and earth and loose rock fell upon claimant and injured him. His daily wage was $2.40. Employer's first notice of injury was filed with the Commission March 29, 1927. Report of initial payment of compensation for one week at $9.23 was filed April 5, 1927. Attending physician's report was filed April 13, 1927, describing the nature and extent of the injury as: "Contused wound of right dorsal region about three inches in length, fracture of eighth rib and lacerated wound about three inches in length on anterior tibial surface left leg." Employee's first notice and claim for compensation was filed April 18, 1927, in which he stated that he had been discharged by physician as able to return to work April 13, 1927, and as to the date when he returned to work he stated: "Not able to work until job was finished." He gave his post office address as Horatio, Ark., General Delivery, and indorsed upon the claim the following: "I have only received $9.23 for compensation. Please send check for bal. at once." Draft for $12.39, together with stipulation and receipt on form No. 7, prescribed by the Commission, was thereafter mailed to claimant at Horatio, Ark. He received and cashed the draft, but did not sign and return the stipulation and receipt.

No further proceedings were had until January 22, 1931, at which time claimant filed what he called a supplemental claim for compensation, in which he set up a claim to the effect that he had never been able to perform any manual labor during all that time, and had continually suffered from the fracture and dislocation of his backbone or spine, with constant pains in his left side, with a dislocation of the right kidney and pains in the right lung, and that said injury continually prevented him from performing any manual labor, and that he was then totally and permanently disabled and his condition was the result of his injury received March 19, 1927. He also set out that he had never signed any final receipt of settlement for his injury and had not agreed to accept the $21.54 that had been paid to him as a final settlement, but had continued to expect the payment of additional compensation, but had never known how to present the matter to the Industrial Commission, for the reason that he had left the state as soon after the date of his injury as he was able to travel.

Hearing was ordered and held at Antlers, Okla., on March 24, 1931, and continued for the taking of depositions of a physician by claimant, and for physical examination of claimant by a physician selected by the employer and insurance carrier. Further hearing was had on April 15, 1931.

Claimant was a witness in his own behalf, and after detailing the manner in which the injury occurred stated, in substance, that in the accident his back, right side, right kidney, and left leg were injured; that he was taken to a physician by the foreman; that he was treated by said physician for about two weeks; that he remained in Antlers until about the 1st of May, 1927, and went from there to Horatio, Ark., in order that his family might earn money by picking strawberries; that he stayed in Arkansas until about the 1st of June, when he went back to his former home at Anson, Tex.; that he was not able to work while in Arkansas, and that he was not able to do any work until about April, 1928, that he rented a farm of about 100 acres in the spring of 1928, raised a crop of cotton that year. As to the work done by him thereafter he testified:

"Q. What date did you leave the farm? A. About the 1st of January, 1929. Q. Did you move back into town? A. No, sir; I moved down about Hodges, Tex., on my wife's mother's place and lived in her house. Q. What county is that? A. Jones. Q. What kind of work did you do there? A. I didn't do anything. Q. Did your family do any work? A. My wife did some sewing. Q. Is your wife considered a fair seamstress? A. Yes, sir. Q. How long did you live there? A. Two years. Q. Did your injury bother you? A. Yes. Q. You lived there two years—that was from '29 to recently? A. Yes, sir."

He testified further as follows:

"Q. Now, recently, in the last few months, what kind of work have you been doing? A. I haven't done anything till about three weeks ago, when I went to work for the State Highway Department. Q. You stated you were working in the Maintenance Department? A. Yes, sir. Q. They work out on the state roads? Q. What

highway are you working on? A. Highway 83. Q. It runs from where? A. From Albany, Fisher county, runs west. Q. From Albany, east and west through Jones county? A. Yes. Q. Did you do any heavy work on this road? A. No, sir. Q. Dig any ditches? A. No, sir. Q. How much were you paid—your average wage on this highway? A. Thirty cents an hour, nine hours of work. Q. In 1927, when you were working for Earl W. Baker, how much were you making? A. Thirty cents an hour, for eight hours work."

When questioned by one of the Commissioners, he testified as follows:

"By the Court: Q. When you got hurt on March 19, 1927, how long was it after that injury before you were able to perform ordinary manual labor? A. Well, I am still not able, judge. Q. Are you able to do anything at all now? A. Yes, sir; I can do light work. Q. How long were you totally disabled in doing any kind of work? A. Up till about March 1, or April 1, 1928. Q. March 1st or April 1st, 1928? A. Yes, sir. Q. Didn't do anything up till that time? A. No, sir. Q. They paid you some compensation, didn't they? A. Yes, sir. Q. How much? A. $21.50. Q. Now, you were earning $2.40 a day at the time of the injury? A. Yes, sir. Q. What is your earning capacity now? What can you earn in the condition you are in? A. At the present job I have, I am getting $2.70."

Dr. C. O. Williams, of Sylvester, Tex., testified on behalf of claimant relative to his condition from an examination made by him on March 16, 1931. His testimony, in part, is as follows:

"Q. Did you make an examination as a physician and surgeon of the portions reported by him to you, to be injured? A. I did. Q. Now I will first inquire about the condition you found his spine in. A. I found in the lower lumbar region a break of the bony processes from each side of two vertebrae in the lower region of the lumbar region, the muscles were torn loose. Q. Now, what effect, doctor, of the tearing loose of the muscles on each side of the spine have on a man? A. It leaves that process of that part of the body unsupported. * * * Q. With the condition you have stated P. L. Maples' spine was in, from your experience as a physician and surgeon, what effect would it have upon his ability to perform manual labor. A. He can't perform manual labor. * * * Q. Did you make any examination of P. L. Maples' kidneys? A. I did. Q. What condition did you find his kidneys in? A. I found one of them loose. Q. Which kidney did you find loose? A. The right kidney was loose and a mass of growth in the region of the right kidney. * * * Q. From your experience as a physician and surgeon and from your examination of Mr.

Maples on the date stated, would you say that the condition of his right kidney as you found it is such as to totally disable him from performing hard manual labor? A. It is. Q. From your experience as a physician and surgeon, and from the condition you found P. L. Maples' right kidney, would you say that such condition is permanent or not? A. I would say it is. Q. Did you make an examination of his lungs? A. I did. Q. What condition did you find his lungs in? A. I found the lower part of the right lung badly scarred. Q. What does his condition as you found that lung indicate? A. It indicates T. B. * * * Q. From the condition you found Maples' right lung in, would you say that it of itself would render him totally disabled from performing hard manual labor? A. I do."

He also testified that in his opinion the condition he found as to claimant's spine, his kidney, and lungs, were all caused by an old injury. On cross-examination he modified his testimony to some extent by saying that he was of the opinion that claimant was unable to perform any hard manual labor.

Dr. Leroy D. Young of Oklahoma City examined claimant on March 26, 1931, aided by X-ray photographs. He testified as to his findings and his testimony shows in the main to be in direct conflict with that of Dr. Williams.

The Commission made findings of fact to the effect that claimant, while engaged in digging the ditch, received accidental injuries to his back in the lower lumbar regions and to his left side; that claimant had been paid compensation in the sum of $21.54, being temporary total from March 19, 1927, to April 9, 1927, less five-day waiting period; that the average daily wage at the time of the accident was $2.40; upon these findings the Commission entered the following conclusions:

"The Commission is of the opinion: By reason of the aforesaid facts, that claimant is entitled to compensation from January 2, 1931, to April 15, 1931, which is 14 weeks and 4 days, computed at the rate of $9.23 per week, making a total of $135.87, and continued thereafter until otherwise ordered by the Commission, and also such reasonable medical expense as has been incurred by claimant by reason of said injury and continued treatment until otherwise ordered by the Commission."

It will be observed that the Commission made no finding as to how long temporary total disability continued after the accident, nor was any finding made by the Commission as to when any disability thereafter accrued, nor whether such subsequent disability, if any, was caused by the original

injury, nor is there any finding made as to whether such subsequent disability, if any, was temporary or permanent, total or partial. The award seems to have been made upon the basis of total disability and was made to run until otherwise ordered by the Commission without regard to the limitations provided by section 7290, C. O. S. 1921, as amended by section 6, ch. 61, S. L. 1923, thus indicating presumably that the Commission intended to find the disability temporary in character. If the award was intended to be for permanent total disability, it should have been limited to 500 weeks. If it was intended to be for temporary total disability, it should have been limited to 300 weeks.

Petitioners contended in their supplemental brief that claimant is barred for the reason that a claim for the injury for which compensation was awarded was not filed within one year from the date of the injury, and no showing was made that the employer and insurance carrier had not been prejudiced by the failure to give such notice.

This contention cannot be sustained. As heretofore pointed out, the record discloses that claimant filed his first notice of injury and claim for compensation April 18, 1927, 30 days after the alleged accidental injury. While it is true that, in describing the nature and extent of the injury in his claim no mention was made of any injury to his back or his lung and he was then apparently claiming only that his leg had been lacerated and that he had two broken ribs, the report of the attending physician showed that claimant had suffered a contused wound of the right dorsal region about three inches in length.

Exact precision is not required in describing the nature and extent of injuries claimed, for all that is required by section 7292, C. O. S. 1921, is that the notice shall state in ordinary language the nature and cause of the injury. The claimant may be entirely mistaken as to the nature or extent of the injury. Such matters are to be determined by the evidence presented before the Commission.

Petitioners contend that there is no evidence to support the award of compensation from January 2, 1931, to April 15, 1931, and thereafter until further ordered by the Commission.

In view of the testimony of claimant, it is apparent that the Commission was of the opinion that claimant was not disabled during the period between April 9, 1927, and January 2, 1931, as no compensation was allowed for that period. Claimant himself testified that he was employed by the Highway Department of the state of Texas on or about March 1931, and was on the date of the hearing so employed and was earning 30 cents per hour working nine hours per day. His earnings were then 30 cents per day more than he was earning at the time of his injury. While Dr. Williams testified that in his opinion claimant was unable to perform manual labor, the uncontradicted evidence of claimant was that at the time he was examined by Dr. Williams he was working for the Highway Department of the state of Texas, drawing $2.70 per day. In the face of this evidence, it is not possible to say that claimant was totally disabled. He may have been so disabled during the period between January 2, 1931, and March 31, 1931, but certainly not thereafter.

There was no competent evidence to sustain an award for total disability, either permanent or temporary, extending beyond the time when claimant was employed by the State Highway Department of the state of Texas, which date claimant fixes as about three weeks prior to the date of the hearing at Antlers, Okla., which was on March 24, 1931.

How the Commission fixed the date upon which to commence payments as of January 2, 1931, does not appear other than from the date when claimant filed his supplemental claim for compensation, which is stated in the findings as January 2, 1931. This, however, is not the correct date. The original supplemental claim appears to be in the record, and it shows that it was verified before a notary public of Jones county, Tex., January 20, 1931, and is stamped in four different places as having been received by the State Industrial Commission January 22, 1931.

Allowance for medical expense was not warranted for the reason that no request for medical treatment was made by claimant and refused by the employer.

There is no appeal by claimant for failure of the Commission to make an award for compensation for any part of the period between April 9, 1927, and January 2, 1931; therefore there is nothing before this court for review as to that period of time.

The award is reversed and set aside in so far as it allows compensation for total disability after March 3, 1931, and is affirmed in so far as it allows compensation from January 2, 1931, to March 3, 1931.

LESTER, C. J., and HEFNER, CULLI-

SON, SWINDALL, ANDREWS, and Mc-NEILL, JJ., concur. CLARK, V. C. J., and KORNEGAY, J., dissent.