UNIROYAL, INC., and Own Risk, Petitioners,

v.

Daniel Dean McMASTERS, and Workers' Compensation Court, Respondents.

No. 62314.

Court of Appeals of Oklahoma, Division No. 4.

Feb. 12, 1985.

Released for Publication by Order of the Court of Appeals March 22, 1985.

Harry L. Bickford, Wallace, Bickford, Pasley & Farabough, Ardmore, for petitioners.

Richard A. Bell, Norman, for respondents.

BRIGHTMIRE, Presiding Justice.

Under attack here is a workers' compensation award for both physical and mental sequelae secondary to a work-related back injury suffered by claimant Daniel McMasters. We sustain the award.

### I

A sharp pain suddenly streaked across the employee's back while he was in the act of trying to move a tire rack with a bad wheel on August 31, 1982. He received immediate medical attention. Eventually it was discovered that he had sustained a compression fracture of a lower spine. vertebra.

This claim was filed August 10, 1983, specifying injury to "upper back and neck" and amended three months later to include "psychological overlay," or traumatic neurosis. At the trial claimant was permitted to further amend his Form 3 to conform with the proof by adding "low back" to the list of injuries "with the understanding," said the judge, "that there is no claim being made at this time for any disability to the low back."

On February 16, 1984, the trial court found that claimant sustained a compensable injury "to the cervicothoracic and thoracolumbar spine with resulting depressive neurosis" on August 31, 1982, and that as a

consequence "claimant sustained 17 percent permanent partial disability to the body as a whole" due to the spinal injury and "15 percent permanent partial disability to the body as a whole due to resulting depressive neurosis."

Employer "appealed" to the Workers' Compensation Court en banc. It affirmed the trial court and the employer seeks review here.

## II

Employer first attacks the award for including injury to claimant's thoracolumbar spine despite claimant's failure to make a claim for that injury. This was wrong, says the employer, because "not only did Uniroyal have no notice of an injury to the lower back, but McMasters failed to assert this injury at all times, until the hearing itself ... [and] the Trial Court in the present case found that McMasters suffered permanent impairment to his upper back and *lower back* ... [when] there is no evidence to show a lower back injury."

Claimant's response to this is that the court did not include injury to the lower back in determining disability but merely referred to it as part of the initial injury.

■ Because of the way the disability finding is worded—disability "due to injury to the spine"—we cannot say with certainty that the trial judge attributed the compensated disability partly to the lower spinal involvement, although it is unlikely that he did in view of the earlier quoted comment he made at the close of the evidence when he permitted the Form 3 to be amended. But even if we were to assume he did, no miscarriage of justice resulted because the employer had ample notice of the lower back injury, and actually placed in the record evidence both affirming and negating it. *Oklahoma Gas & Electric Co. v. Hunsicker*, 178 Okl. 565, 63 P.2d 21 (1936). In *Earl W. Baker & Co. v. Maples*, 155 Okl. 105, 8 P.2d 46 (1932), for example, the court upheld an award of compensation for injury to the back in the lumbar regions and to the left side even though in the claim for compensation "no mention was made of any injury to his [claimant's] back or his lung ... [after earlier] apparently claiming only that his leg had been lacerated and that he had two broken ribs." *Id.* at 108, 8 P.2d at 49. In *Maples*, the report of the attending physician indicated that claimant had sustained a contused wound of the right dorsal region. In allowing recovery for the unpleaded harm, the court stated that all that is required to sustain the back award is that the "notice shall state in ordinary language the nature and cause of the injury. The claimant may be entirely mistaken as to the nature or extent of the injury. Such matters are to be determined by the evidence presented before the Commission." *Id.*

Here, the language of the original Form 3 sufficiently apprised the employer of the general nature of the injury by referring to it as a "fracture and dorsal strain" of the "upper back and neck," coupled with a description of the immediate effect of the injury, namely that "my back seemed to pull apart while I was straining to move rack." Such history was sufficient to make the entire spine suspect and subject to judicial scrutiny.

And, indeed, it was suspect. Employer's own evidence, as we said, recognized injury to claimant's lower back. The company's chosen physician conducted an examination of this spinal region and in his report referred to the fact that claimant's doctor, a neurologist, had concluded that (1) McMasters had experienced a "low back strain" and (2) there was intervertebral disc space narrowing in the lumbar spine. The company's chosen doctor conducted tests with reference to both the thoracic and *lumbar* spine and reported he could discern "no permanent partial impairment of function to the thoracic or lumbar spine." These facts preclude the employer from successfully claiming surprise, ignorance or prejudice regarding the low back involvement, as well as from challenging the back-related disability finding for lack of evidentiary support.

Finally, although the foregoing would seem to destroy the employer's contention that the record contains no competent evidence of injury to claimant's lower back, there was still more evidence. The neurologist, for instance, who had received a history of low back involvement, said that an "[x]-ray of the lumbar spine shows chronic L4–5 and L5–S1 disc space narrowing," and concluded that patient had suffered a "low back strain." Another medical witness opined that claimant had sustained "28% permanent impairment to the whole man due to the injuries sustained to the cervicothoracic spine and *thoracolumbar* spine." (Emphasis added). Still another physician found "moderate L4–5 narrowing with severe L5–S1 narrowing. There are scattered hypertrophic changes throughout."

The employer's first proposition is clearly without merit.

### III

In its second proposition the employer contends, in effect, that the trial court erred in awarding compensation for claimant's depressive neurosis. The employer recognizes that mental problems resulting from an on-the-job injury are compensable,[1] but argues that in the present case there was no showing of a causal connection between McMasters' injury and his mental abnormalities.

 This argument either overlooks or ignores the report of a psychiatrist stating that "[t]his man suffers an emotional disorder *apparently precipitated by an injury*." (Emphasis added). And even the employer's own medical expert reported that "[t]he frustration concerning his injury and removal from work could certainly have entered into the causative factors for his depression, but other factors very likely entered as well." This medical testimony when coupled with claimant's testimony that (1) he first noticed that he was depressed "about the middle of September, 1982," which was half a month after his injury; (2) he still has trouble sleeping because he stiffens up; (3) sometimes his muscles tighten up and he gets headaches; and (4) he has a sharp pain in between his shoulders, was sufficient foundation for the trial court's conclusion that claimant's mental problems were secondary to subject accidental injury and therefore compensable. *Oklahoma Natural Gas Co. v. Kelly*, 194 Okl. 646, 153 P.2d 1010 (1944).

### IV

Employer's final argument is that "the court erred in determining that claimant was 15 percent permanently disabled to the body as a whole as a result of depressive neurosis when the evidence indicated that McMasters was in need of psychiatric treatment and had not yet sustained maximum recovery." The contention is that McMasters' condition ought to be treated before any permanent partial disability is determined in deference to a public policy preference of treatment over disability.

Here again the employer relies on certain evidentiary fragments to the exclusion of or misconstruction of others. Its argument is completely discredited by the testimony of the psychiatrist who concluded several months after the injury that McMasters suffered "a permanent partial impairment of 15% to the body as a whole" due to his depressive neurosis. And on December 16, 1983, that same doctor wrote, "it is my opinion that Mr. McMasters has probably achieved *maximum improvement in the emotional and mental area*, following his injury of August 31, 1982. Despite this, it is my opinion that this man is in need of continuing psychiatric counseling because of the tendency to progressive worsening of the disorder, with regressive features and a development of a paranoid attitude that can grow increasingly more severe." (Emphasis added). In other words, the physician is saying that the claimant had permanent traumatic neurotic disability in 1983 and that he needed

---

1. In *Wade Lahar Construction Company v. Howell*, 376 P.2d 221 (Okla.1962), the court holds that "[d]isability from a psychiatric condition produced by an accidental injury is compensable in the same manner as any other impairment of the body." *Id.* at 224.

ongoing treatment to prevent progressive worsening.

■ This is competent evidence. It is sufficient to support the lower court's finding that claimant had reached maximum recovery and that further psychiatric care was needed—not curative but preventive care—to impede further mental deterioration.

### V

The order of the Workers' Compensation Court is supported by competent evidence and is therefore affirmed.

STUBBLEFIELD, J., concurs.

RAPP, J., specially concurs.

RAPP, Judge, specially concurring.

I concur specially, after a review of the record, with the majority.

The record discloses that the order rendered by the three-judge panel, sitting as the court en banc, within the Workers' Compensation Court intra-court structure, is defective. The order fails to state the findings of fact and conclusions of law upon which the decision is based and it also fails to state the standard of review utilized in reviewing the trial court's decision. Under *Gleason v. State Industrial Court,* 413 P.2d 536 (Okla.1965), and the tutorial decision of *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okla.1984), these defects normally require that the decision of the three-judge panel be vacated and remanded for further proceedings.

However, because of a problem not explored in *Parks* or covered in the statute, 85 O.S.1981 § 3.6 A, to wit, that of affirmation of the trial court's order by the three-judge panel where that panel fails to state jurisdictional requirements in its order, a question arises as to which is the final order subject to review in the appellate process—the order of the trial court or the order of the three-judge panel.

*Parks* and the cases cited therein clearly spell out that the order of the three-judge panel *is the final order of the Workers' Compensation Court* subject to review by the supreme court (and court of appeals) when review is requested within the intra-court structure *and* the three-judge panel *reverses or modifies* the trial court's order.

Based upon the decision in *Parks,* which holds in part:

> "Because in contemplation of law the trial judge's decision, *when altered,* stands replaced with that of the review panel, there is never more than *one* final decision to be viewed in the appellate courts." (Emphasis added).

*Id.* at 551, and the language of the statute, 85 O.S.1981 § 3.6 A, which states in part:

> "The Court en banc *may reverse or modify* ... only if ... against the clear weight of the evidence ..." (Emphasis added).

I would hold under the intra-court review structure that the judgment of the trial court must be the final order subject to review, where the three-judge panel affirms the trial court's order and does not in their order state either the standard of review used or place therein their jurisdictional findings of fact and conclusions of law.

The three-judge panel, in affirming the trial court and failing to state the standard of review utilized and their findings of fact and conclusions of law, has adopted the order of the trial court as the final order subject to appellate review under the intra-court structure of review. Failure to so hold would require vacating and remanding the order of the three-judge panel for further proceedings under *Parks* and 85 O.S. 1981 § 3.6 A. This would work a dual hardship upon a claimant receiving a favorable decision in the trial court by (1) requiring an additional period of time to obtain a final decision and award; and (2) denying to the claimant, upon remanding, the interest due him under the order of the panel, both of which are contrary to the intent of the Workers' Compensation Act.

Therefore, based upon the competent evidence found in the record underlying the reasoning above, I join in the affirmance of

the final order of the Workers' Compensation Court.