**BOOTH & FLINN, LTD., v. COOK et al.**

No. 11140—Opinion Filed Oct. 12, 1920.

(Syllabus by the Court.)

1. **Master and Servant—Workmen's Compensation Act—Aggravation of Injury by Unskillful Treatment—Effect on Award.**

Under the Workmen's Compensation Act it is incumbent upon the employer to promptly provide medical and surgical aid, and a schedule of compensation is adopted providing specific amounts of recovery for specific results of accidents. In an action before the Industrial Commission for compensation under said act it was conclusively found by the commission that the workman's injuries had been aggravated and his disability increased by improper treatment of the physician so provided without fault of the workman himself. Held, the employer is liable for all legitimate consequences following the accident, including unskillfulness or error of judgment of the physician furnished as required, and the employe is entitled to recover under the schedule of compensation for the extent of his disability based upon the ultimate result of the accident regardless of the fact that the same has been aggravated and increased by the intervening negligence, or carelessness of the employer's selected physician.

2. **Evidence—Judicial Notice—Train Schedules.**

The schedule time of the arrival and departure of trains at a particular place is so variable that courts will not take judicial notice thereof.

Appeal from Order of State Industrial Commission.

Award of workman's compensation to W. F. Cook for injuries, from which award the employers, Booth & Flynn, Ltd., appeal. Affirmed.

Breck Moss, for petitioners.

Pennel & Harrison, for respondents.

RAINEY, C. J. On September 28, 1918, one W. F. Cook, while in the employ of Booth & Flynn, Ltd., had his leg broken, for which the Industrial Commission, on December 30, 1918, allowed him compensation at the rate of $10 per week until recovery. Thereafter, Booth & Flynn, Ltd., filed an application before the commission to discontinue the payments granted by the award, and the claimant, in an amended answer, alleged that since the making of said award it had become necessary to amputate his leg, and asked that a new award be made giving him the compensation provided by the Workmen's Compensation Act for the loss of a leg. The commission granted a hearing in the matter, which was had in Bartlesville, Oklahoma, on June 20, 1919, and in Oklahoma City, on August 20, 1919, as a result of which it was found that the claimant had suffered the loss of his leg by reason of his injuries and was entitled to compensation fixed by the act for the loss thereof, and

entered an order vacating the award made on December 30, 1918, and allowing claimant compensation at the rate of $10 per week for 175 weeks from October 12, 1918, less any sums paid under the first award. From this order Booth & Flinn, Ltd., as petitioners, have appealed to this court.

The commission, in its written opinion by Commissioner Taylor, filed December 5, 1919, made the following findings of fact:

"The facts, as proved in this case, are that the claimant, Cook, suffered a fracture of his leg while in the employ of the respondent, Booth & Flinn; that on the 28th day of September, 1918, the date of injury, the claimant was taken by the respondent to a hospital at Bartlesville, Okla., where the fractured leg was set; that he remained at said hospital until the evening of November 17, 1918; that thereupon he went to his home at Coffeyville, Kansas; that his injury was treated by a physician at Coffeyville, who found that the man's leg was in a bad condition; that on the 29th day of January, 1919, claimant was taken to Coffeyville hospital, and on February 13th underwent a surgical operation for the purpose of correcting a vicious union of the broken fragments of the leg; that the condition of his left leg was about four inches short and his toes turned toward the ankle of the right foot; that the lower fragment of the fracture was drawn up about four inches above the lower end of the upper fragment; that the upper end of the lower fracture was firmly united to the side of the upper fragment about four inches above the end of the break of said fracture, and also that there was a bony union between the sides of the two fragments; that to correct this vicious union, the usual operation was done and there was applied what physicians call a Lane Plate; that after said operation no union between the fragments took place and in consequence it became necessary to amputate the leg, which was done on June 2, 1919."

It is the contention of the petitioners that the claimant's leg was properly set by their physician at the Bartlesville hospial, and that if the claimant had remained there it would not have been necessary to have amputated his leg. Petitioners further contend that the claimant left without their knowledge or consent, but that, on the contrary, Dr. D. O. Crawford advised against his leaving the hospital and requested him to remain at least a week longer in order to get used to his crutches with the aid of his nurse. Dr. Crawford also testified that he himself removed the splints and found that

there was a union of the fractured parts before the claimant left the hospital. Petitioners say that claimant's leg was rebroken, resulting in the amputation, for which they are not responsible. The plaintiff's evidence shows that he was taken home from the Bartlesville hospital on a stretcher and that his leg was not rebroken nor injured in any way from the time he left the Bartlesville hospital, and that at the time he left said hospital the broken leg was shorter than the other leg and the toes were turned over toward the ankle of the other leg. In this he was corroborated by other witnesses, including physicians at the Coffeyville hospital, who testified that his left leg was about four inches shorter than his right, with his toes turned toward his ankle; that the upper end of the fractured femur was drawn out and the lower femur was drawn up, thereby causing the shortening of the leg. These physicians also testified that their examination of the fractured leg disclosed it had not been rebroken since it was first set.

The commission, in its opinion, held that if the claimant's leg was properly set at the Bartlesville hospital by the petitioners' physician and he left the hospital prematurely without the consent of said physician or authorities in charge, and such action aggravated the injury and resulted in the rebreaking of his leg, he would not be entitled to recover the compensation fixed by the law for the loss of a leg; but that if the claimant's leg was improperly set by petitioners' physicians and a vicious union resulted therefrom, the loss of the leg would be upon the petitioners.

We agree with this view. It is true that an injured workman cannot recover compensation for an increase of disability where he himself caused the aggravation. See Pacific Coast Casualty Co. v. Pillsbury-Industrial Accident Comm. (Cal.) 153 Pac. 24, and cases cited therein. This is on the theory that the increase of disability was a subsequent injury occasioned by the negligence of the injured person himself, and therefore the employer is not liable. But this doctrine has no application to this case. for after a full hearing, as above stated, the commission found that the amputation of claimant's leg resulted from his injury aggravated by improper treatment by petitioners' physicians, and that his leaving the hospital prematurely did not affect his condition. This was a question of fact determinable by the commission under the Workmen's Compensation Act, and its finding is conclusive. Section 10, chap. 246, Session Laws 1915; Raulerson v. State Industrial Commission et al., 76 Okla. 8, 183 Pac. 880; Board of

Com'rs of Cleveland Co. v. Barr et al., 68 Oklahoma, 173 Pac. 206.

We are aware that in negligence cases not arising under compensation acts many courts hold that the master's liability ceases when he exercises reasonable care in selecting competent physicians or surgeons. But workmen's compensation acts are a departure from cases of liability resulting from negligence and fix specific amounts of recovery for specific results of accidents. To deny recovery for the ultimate result of the accident where the disability has been increased by the intervening negligence or carelessness of the employer's selected physician would be to defeat one of the purposes of the act. Under workmen's compensation acts an employer is liable for all legitimate consequences following an accident, including unskillfulness or error of judgment of a physician furnished the injured employe as required by section 4 of our Compensation Act. See Sams v. Komas & Dorros, 2 Cal. Ind. Acc. Com. 203; Schofield v. Contractors' Mutual Liability Ins. Co., 1 Mass. Ind. Acc. Bd. 95; Johnson v. Pacific Surety Co., 1 Cal. Ind. Acc. Com. (part 2) 560; Stockwell v. E. M. Waymire, 1 Cal. Ind. Acc. Com. (part 2) 225; Shirt v. Calico Printers' Association (Eng.) 78 L. J. K. B. 528 (1909), 2 K. B. 51, 100 L. T. 740, 25 T. L. R. 451, 53 Sol. Jo. 430, 2 B. 342, c. a.; Dunnigan v. Cavan (1911) S. C. 579, 48 S. L. R. 459, 4 B. 386; Beadle v. Milton and Others (1903) 114 L. T. 550, 5 W. C. C. 55; Harrison v. Ford (1915) Eng. Ct. of Appeal, 8 B. W. C. C. 429; Bradbury's Workmen's Compensation (3rd Ed.) (1917) pages 407-410; Dawbarn on Employers' Liability (4th Ed.) (1911) pages 104-111; Beverley's Workmen's Compensation Cases, sec. 20, pages 103-105; Dawbarn's Workmen's Compensation Appeals 1910-1912, sec. 1, and 1912-13, sec. 1.

But it is urged by petitioners that the commission erroneously overruled their motion to quash the depositions of certain witnesses taken at Coffeyville, Kansas, and considered the testimony therein contained in making its findings of fact to the prejudice of petitioner's rights.

Under section 12 of the act, the commission is authorized to cause the depositions of witnesses residing within or without the state to be taken in the manner prescribed by law for depositions in civil actions in courts of record, and counsel for petitioners say that sufficient notice was not given of the taking of the depositions of the witnesses at Coffeyville, as provided by section 5079, Revised Laws 1910. In order for us to sustain this contention we would have to take judicial notice of the schedule time of the departure of the trains from the place where the notice was served and their arrival at the place designated in the notice for the taking of said depositions. This we cannot do. Boatman v. Coverdale (decided September 14, 1920, not yet officially reported).

The award of the commission is affirmed.

KANE, PITCHFORD, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur.