## BARNSDALL REFINING CO. v. RAMSDALL et al.

No. 21639. Opinion Filed May 19, 1931.

Cheek & McRill, for petitioner.

Reid, Lewis & Reid, for respondents.

ANDREWS, J. This is an original proceeding in this court to review an award of the State Industrial Commission in favor of the claimant therein, respondent herein, made on the 14th day of August, 1930, awarding the claimant 50 weeks' compensation at the rate of $18 per week for ten per cent. permanent partial loss of the use of both legs and 150 weeks at the rate of $18 per week for 60 per cent. permanent partial loss of the use of the left arm, in the total sum of $3,600.

The injury occurred on March 2, 1925, while the respondent was in the employ of the petitioner, and arose out of that employment. The petitioner admits that it resulted in temporary total disability from that date to July 1, 1930. Compensation for that period was paid by petitioner and received by respondent. Medical attention, hospital service, and other care was furnished by petitioner and paid for by it. Upon the hearing of the claim for permanent partial disability, the Commission made the award hereinabove stated and herein complained of.

It is contended by the petitioner that after the injury of March 2, 1925, and after the arm of the respondent had been set and placed in a cast, the respondent "on two occasions at least" "caused it in some manner to be again broken." The respondent denies this and contends that "a good union had not been obtained" by the first attending physician furnished by the petitioner and that the second attending physician "separated it and tied it and expected it to grow together, but it didn't"; he thereupon removed a portion of the bone from the upper arm for a graft at the site of the fracture; that approximately six months thereafter the arm in some manner again became fractured, necessitating another bone graft, for which purpose a piece of bone was taken from the right leg; and that after this operation it was discovered that there was a gap between the two fragments of the bone and, to remedy this condition, a piece of bone was taken from the left leg for a bone graft. While the cause or causes of the treatment given are disputed, it is admitted that a piece of bone was taken from the left arm, a piece from the right leg, and a piece from the left leg in order that the operations might be performed. It is not seriously contended that there was not a 60 per cent. permanent partial disability of the left arm and a ten per cent. permanent partial disability of each of the legs.

As to the original injury there is no dispute. Petitioner contends that there is no evidence in the record from which it can be determined that the subsequent breaks of the legs were due to the original injury. The petitioner says:

"If it became necessary to reset the arm and to take a sliver of bone from his leg for that purpose, then the burden is upon the claimant to show by competent evidence that such operation resulting in disability to his leg, was occasioned and caused by the original accident, or is the natural consequence thereof. The claimant has not met this burden. He has not shown that the subsequent operations, resulting in disability to his legs or feet, was caused by the original injury."

Under the doctrine stated in Booth & Flinn, Ltd., v. Cook, 79 Okla. 280, 193 Pac. 36, the employer is liable for all legitimate consequences following the accident, including unskillfulness or error of judgment of the physician furnished as required, and the employee is entitled to recover under the schedule of compensation for the extent of his disability based upon the ultimate result of the accident regardless of the fact that the same has been aggravated and increased by the intervening negligence or carelessness of the employer's selected physician. See, also, Brown v. Sinclair Refining Co., 86 Okla. 143, 206 Pac. 1042. The record shows that respondent's arm was broken under facts making the injury compensable. The medical treatment of the respondent was furnished by the petitioner. The petitioner does not charge that the respondent willfully broke his arm on the subsequent occasions and does not undertake to say under what circumstances the subsequent breaks occured. The record tends to show, and there is sufficient evidence to support a finding of the State Industrial Commission to that effect, that the present condition of the respondent is the legitimate consequence of the injury received, aggravated and increased by the intervening failure of employer's selected physician to give the respondent proper medical and surgical attention. Dr. Murdock, the second physician employed by the petitioner, testified:

"When Mr. Ramsdall first was hurt, he

had a fracture of the radius. I didn't treat him then. I saw him three or four months after that, and separated it, and tied it, and expected it to grow together, but it didn't. So then, in about some few months, we made another bone graft on the left arm. Well, that grew in very nicely and no infection or anything, and unfortunately in about six months he fractured the arm in the same place, so we made another graft taking a piece of bone from the femur—no, out of the tibia, and made another bone graft and that grew in very nicely and no infection. We have X-rays of that, and then unfortunately, in about six or eight months, he broke that in two in the middle, and then about a year and half ago, in February, two years ago, I took the two-thirds of the fibula out, and we grafted that in the place of the fractured bone. He had a gap at that time about one inch long between the two fragments with the radius—between the two fragments of the radius, so we grafted this in there by the use of—we made the graft that time, and it healed very nicely. It grew in and he wore a splint on it on account of the danger of refracturing, until about a month ago, and it is growing in very nicely. That has been almost two years. When I removed the fibula of his leg, unfortunately it got infected, and for about six months he had paralysis of one of the nerves of the leg, but that all regenerated and is in very good condition now."

From that testimony it appears that the attention given the respondent by the first attending physician selected by the petitioner did not result successfully and the first operation performed by the second attending physician was unsuccessful. Doubtless, had either of them been successful, no bone graft would have been necessary. The bones of the arm in the weakened condition after the grafts were more easily broken than had the arm been in its original condition.

Section 7295, C. O. S. 1921, provides:

"In any proceeding for the enforcement of a claim for compensation under this act, it shall be presumed in the absence of substantial evidence to the contrary:

"1. That the claim comes within the provisions of this act.

"2. That sufficient notice thereof was given.

"3. That the injury was not occasioned by the willful intention of the injured employee to bring about the injury of himself or of another.

"4. That the injury did not result solely from the intoxication of the injured employee while on duty.

"5. That the injury did not result directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the Labor Commissioner."

When that section is applied to the evidence in this case, we must conclude, in the absence of substantial evidence to the contrary, that the condition of the respondent was not occasioned by the willful intention of respondent to bring about the injury to himself. With that presumption, there is sufficient evidence to show that his present condition is the legitimate consequence following the accident, under the rule stated in Booth & Flinn, Ltd. v. Cook, supra.

This court, in Maryland Casualty Co. v. State Industrial Commission, 139 Okla. 302, 282 Pac. 293, Capitol Drilling Co. v. Cole, 143 Okla. 279, 288 Pac. 473, and subsequent cases, has held that an award for permanent partial impairment of two eyes should be made on the basis of 500 weeks. Those decisions are criticized by the petitioner as an incorrect statement of the law and unsupported by decisions of other courts. Be that as it may, they announce the established rule in this state, and under that rule, where there is a ten per cent. permanent partial loss of the use of both legs, the compensation should be computed on the basis of 500 weeks and an award of 50 weeks for ten per cent. permanent partial loss of the use of two legs is in conformity therewith and must be approved. There is nothing in Smith & Sons Drilling Co. v. Breed, 146 Okla. 135, 294 Pac. 137, in conflict herewith.

The contention that an award may not be made for temporary total disability in addition to specific disabilities is in conflict with the rule adopted by this court, stated in Smith & McDannald v. State Industrial Commission, 133 Okla. 77, 271 Pac. 142, as follows:

"Under section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, Session Laws 1923, the State Industrial Commission may make an award for temporary total disability, as a specific injury, notwithstanding that the same may subsequently become a permanent partial disability for which compensation may be awarded" ·

—and in Thompson v. State Industrial Commission, 138 Okla. 166, 280 Pac. 597, and Western Steel Erecting Co. v. Lukenbill, 143 Okla. 92, 287 Pac. 724.

We find no error in the award of the State Industrial Commission, and the same is approved.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL,

and KORNEGAY, JJ., concur. RILEY, J., absent.