## SKELTON LEAD & ZINC CO. v. BAGBY et al.

No. 24789. Nov. 21, 1933.

Vern E. Thompson, for petitioner.

Wm. M. Thomas, for respondents.

McNEILL, J. This is an original proceeding to review an award of the State Industrial Commission for permanent partial disability.

It appears that respondent suffered a hernia on June 2, 1927, by lifting boulders while in the employ of petitioner. Petition-

er tendered and respondent submitted to three surgical operations to repair the hernia. The hernia was cured, but the disability for which respondent was awarded compensation resulted from the third surgical operation. The Commission found, in part, as follows:

"(3) The Commission further finds that on the 8th day of June, 1931, this Commission made a verbal order requiring the respondent to render claimant another and third operation in an attempt to cure said hernia, which the respondent agreed to do; that on the 29th day of July, 1931, the respondent furnished such operation, and it was performed by the respondent's physician, Dr. M. M. DeArman. The Commission finds that at the time and immediately before said last operation was performed, the claimant was suffering a total disability as a result of said injury, which disability would have been permanent without said operation.

"(4) The Commission finds that the last operation performed resulting in holding claimant's intestines up in place, and that as a result of said operation the disability originally suffered by claimant in the nature of the hernia hereinbefore described was alleviated, and the claimant's general disability as a result of said injury and of the treatment therefor was reduced to a partial disability, which is permanent.

"(5) The Commission further finds that the said Dr. M. M. De Arman, by performing the last operation upon claimant for respondent on the 29th day of July, 1931, removed the cord from its natural position and location and transplanted it. That as a result of the removal of said cord and the transplanting of the same it was pinched and interfered with in such a way as to cause complete atrophy of claimant's right testicle and atrophy of the cord to said testicle from the point of interference.

"(6) The Commission further finds that the injury to said testicle and cord was not sustained at the time the hernia was received by claimant and that the organs and parts of the body which were injured at the time the hernia was received and which went into the making of said hernia was different and apart from the testicle and cord. That the injury to the testicle and cord as hereinbefore found is due to the manner and character of medical and surgical treatment furnished claimant by respondent.

"(7) The Commission further finds that the injury to the testicle and cord in the third operation was done by respondent's physician in the use of drastic methods in the performance of the operation to alleviate same, which was at the time of the operation causing total disability to the claimant. That said cord and testicle were injured and that in the reduction of a hernia it is not necessary to injure said parts of the body.

"(8) The Commission finds that the injury to the said testicle and cord has resulted in partial permanent disability to the claimant, which began on the date of the last operation, same being July 29,.1931, which causes him to have a decrease in wage-earning capacity. * * *"

It is conceded by petitioner that the original injury resulting in a hernia was compensable. It appears to be the contention of petitioner that, inasmuch as respondent concedes the hernia has been repaired by the third operation, respondent should have made a specific claim for compensation for the disability resulting from the third operation, and notice thereof given to petitioner for a hearing upon such claim; that it was a jurisdictional prerequisite that such formal claim for compensation for such injury be filed with the Industrial Commission before said Commission could acquire jurisdiction to consider the evidence upon which to base the instant award.

Petitioner also urges that, if it could be assumed that the Commission acquired jurisdiction to consider such claim, the Commission erred in finding that respondent had suffered a loss in wage-earning capacity for the reason that there is no competent evidence in the record upon which such finding could be made.

It is also the theory of the petitioner that in the event the Commission acquired jurisdiction to consider such a claim of respondent, the cases of Crowe Coal Co. v. Swindell, 109 Okla. 275, 235 P. 614, and Southland Gasoline Co. v. Bowlin, 152 Okla. 117, 3 P. (2d) 663, are controlling in the absence of a finding by the Commission of total permanent disability.

It is the contention of respondent that his disability at the time of the rendition of the award in question resulted from surgical treatment to repair his original injury and that such resulting disability is compensable under "other cases." Section 13356, Workmen's Compensation Law, O. S. 1931.

It appears to be admitted that respondent was totally disabled at the time of the hearing on June 8, 1931, as the result of the original injury. At that time a third operation was tendered to respondent by reason of the medical expert testimony which was given at said hearing on behalf of petitioner that it was worth while to endeavor to repair this hernia by another operation, although there had been a failure

to cure the hernia by two former operations.

Respondent meditated about accepting a third operation. He reasoned that the probabilities of relief were remote, and he questioned whether he could survive another operation. Nevertheless he agreed to accept said tender and the case was continued to the next Miami docket pending the operation. No objection was interposed by petitioner to such order of continuance. At that hearing the medical expert testimony was to the effect that total disability would continue and that an operation was necessary to restore earning capacity. The courageous acceptance of the third tender was reasonable in the interest of both employer and employee.

This third tendered operation was performed on July 29, 1931, and thereafter, on November 9, 1932, there was filed with the Commission notice of hearing set for December 8, 1932, at Miami, Okla. In this notice appears the following: "If you desire to have witnesses subpoenaed or any other preparation for trial, please let it be known immediately." Thereafter, on December 8, 1932, the Commission heard testimony pursuant to said notice. This hearing was apparently a continuation of respondent's former hearing upon respondent's motion to reopen said case on a change of condition and to determine the extent of disability, which motion had been filed with the Commission on October 2, 1930, on which the former hearing of June 8, 1931, had been held, and which had been continued to the next docket pending the outcome of the tendered operation.

After respondent accepted the tender of the third operation, the record shows as follows: "Case continued to next Miami docket pending operation, which claimant agrees to accept." In view of the record we think there is no merit to petitioner's contention that a specific claim should have been made by respondent for an additional award before the Commission had jurisdiction to hear evidence on whether or not disability resulted from the third operation tendered by petitioner to respondent.

Petitioner did not at the close of said hearing ask to have the case continued for further hearing by reason of any surprise or prejudice to the rights of said petitioner.

This last operation was tendered to correct the hernia so that respondent might regain his earning capacity. The operation was necessitated by and was incidental to the original injury, and the final consequences under such conditions were reasonably as much due to the accident as though they had manifested themselves immediately. We have heretofore announced the rule, commencing with the case of Gypsy Oil Co. v. Jackson, 158 Okla. 139, 12 P. (2d) 694, to the effect that when an employer has knowledge of the facts of a compensable injury, he then becomes charged with knowledge of the extent of disability resulting from the original injury. See Earl W. Baker & Co. v. Maples, 155 Okla. 105, 8 P. (2d) 46; Chicago Bridge & Iron Works v. Lawson, 163 Okla. 224, 22 P. (2d) 86; Letts Box Mfg. Co. v. Rowan, 163 Okla. 140, 21 P. (2d) 508.

In a well-reasoned case, Booth & Flinn, Ltd., v. Cook, 79 Okla. 280, 193 P. 36, Chief Justice Rainey said:

"Under Workmen's Compensation Acts, an employer is liable for all legitimate consequences following an accident, including unskillfulness or error of judgment of a physician furnished the injured employee as required by section 4 of our Compensation Act. See Sams v. Komas & Dorros, 2 Cal. Ind. Acc. Comm. 203; Schofield v. Contractors' Mutual Liability Ins. Co., 1 Mass. Ind. Acc. Bd. 95; Johnson v. Pacific Surety Co., 1 Cal. Ind. Acc. Com. (Part 2) 560; Stockwell v. E. M. Waymire, 1 Cal. Ind. Acc. Com. (Part 2) 225; Shirt v. Calico Printers' Association (Eng.) 78 L. J. K. B. 528 (1909) 2 K. B. 51, 100 L. T. 740, 25 T. L. R. 451, 53 Sol. Jo. 430, 2 B. 342, c. a.; Dunnigan v. Cavan (1911) S. C. 579, 48 S. L. R. 459, 4 B. 386; Beadle v. Milton & Others (1903) 114 L. T. 550, 5 W. C. C. 55; Harrison v. Ford (1915) Eng. Ct. of Appeal, 8 B. W. C. C. 429; Bradbury's Workmen's Compensation, 3d Ed. (1917) pages 407-410; Dawbarn on Employers' Liability (4th Ed. 1911) pp. 104-111; Beverley's Workmen's Compensation Cases, sec. 20, pp. 103-105; Dawbarn's Workmen's Compensation Appeals 1910-1912, sec. 1, and 1912-1913 sec. 1."

See, also, Barnsdall Ref. Co. v. Ramsdall, 149 Okla. 99, 299 P. 499; Brown v. Sinclair Ref. Co., 86 Okla. 143, 206 P. 1042.

In the case of Barnsdall Refining Co. v. Ramsdall, supra, the claimant sustained a compensable injury. There was a compound fracture of the arm. After it had been set and placed in a cast it appears that a good union was not obtained by the first attending physician furnished by the employer, and it was contended that the second attending physician separated it and tied it and expected it to grow together. However, the union did not satisfactorily take place, and the attending physician removed a portion of the bone from the upper arm for a graft at the site of the fracture. It was necessary to treat the arm

again and another operation was performed on claimant and a bone graft was made by taking a piece of bone from the right leg. After this operation was performed it was necessary to perform another operation and a piece of bone was taken at this time from the left leg for a bone graft. The treatment of the case resulted in taking a piece of bone from the left arm, a piece of bone from the right leg, and a piece of bone from the left leg in the various operations performed which were considered necessary by the attending physician to treat the original injury sustained by respondent. In that case the court awarded compensation for permanent partial loss of the use of the two legs of the injured employee, which injuries resulted from reasonably necessary operations resulting from original injury, following the rule announced in Booth & Flinn, Ltd., v. Cook, supra.

Dawbarn, Workmen's Compensation Appeals, 1912-1913, states in reference to consequent results due to unreasonable conduct or other intervening causes as follows:

"If he act unreasonably, and such unreasonable act is the cause of his incapacity, he cannot recover. Thus a man with a broken arm who goes to a quack bonesetter to have it set, and it is done so badly that he remains incapacitated, will be incapacitated not through the accident, but through the bad setting (Humber Towing Co. v. Barclay, 5 B. 142). Then a man may act reasonably, and if he does so act, irrespectively of whether the result proved he acted for the best or not, it is clear the final consequences will be as much due to the accident as if they had at once manifested themselves."

In the case of Shirt v. Calico Printers Ass'n, Ltd., and reported in Law Reports, King's Bench Division, 1909, volume 2, page 51, it appears that a workman was injured by an accident arising out of and in the course of his employment within the meaning of the Workmen's Compensation Law, and death ensued from the operation consequent thereon. It was held that the test of the question whether death was caused by the accident so as to entitle the workman's dependents to compensation was whether in the circumstances the operation was a reasonable step to be taken to obviate the consequences of the accident. It appears that the workman crushed his hand between two rollers whereby the skin was taken off of the hand. It was necessary for the employee to undergo an operation. Instead of amputating the hand, which was considered to be not an unusual course to pursue, the surgeon decided to perform an operation which would preserve the hand and make the man an able-bodied workman instead of permitting him to be a maimed man for life and thereby relieve the employer from liability. It appears that the first operation was successful and it became necessary to have another operation by grafting new skin on the hand. During the second operation, the workman died. In that case, Cozens-Hardy, M. R., said:

"We are asked to say that the learned county court judge was right in holding that there was no liability on the part of the employers on the ground that this operation was a bold experiment and that in the circumstances the administration of the anaesthetic constituted a novous interveniens. With great respect to the learned judge, he seems to have misdirected himself. The true test was whether the step taken to obviate the consequences of the accident and to make the man a sound, able-bodied man was a reasonable step to take. As to that the evidence is all one way. The learned judge has not applied his mind to that point. He says that the operation was a bold one, and, although the first step in it was successful as far as it went, he seems to have thought that there was some inherent vice in the operation because the second step involved the administration of an anaesthetic which caused death and therefore the operation proved futile. In my opinion the course pursued by the workman was not only courageous but reasonable in the interest of the employers. I think that the learned judge has misdirected himself and that he ought to have held the applicant entitled to compensation. The appeal must be allowed and the case must go back to the county court, not for rehearing, but to assess the amount of compensation, unless the amount is agreed."

Dawbarn on Employer's Liability (4th Ed.) 1911, in considering consequent results of accident, on page 104, states:

"Every consequence of an accident, proximate or remote, is equally the result of the accident, and whether the result is apparent today or six months hence makes no difference. For example, a man gets struck by a bullet which lodges in his side and cannot be removed. He recovers from it and, apparently, for years is in perfect health. Then the bullet shifts its position, causes the stoppage of an artery, apoplexy results, and the man dies. Notwithstanding the lapse of time, the man is as much killed by the bullet as if he had been struck dead on the spot in the first instance."

Under our liberal interpretation of the Workmen's Compensation Law there appears no apparent reason why an injured employee who submits to a surgical operation tendered to him by his employer for

the purpose of perfecting a cure to restore the employee's earning capacity should not be entitled to compensation for the disability, if any, which may follow as a result of a surgical operation regardless of any aggravation of a prior injury or the negligent or careless work, if any, resulting from the operation by the physician selected by the employer. We conclude that the Commission had jurisdiction to make the award in question for permanent partial disability, and that such an award, based upon the facts in the instant case, is not in conflict with our holdings in the cases of Crowe Coal Co. v. Swindell, 109 Okla. 275, 235 P. 614, and Southland Gasoline Co. v. Bowlin, 152 Okla. 117, 3 P. (2d) 663.

Other contentions are urged by petitioners, but we are of the opinion that the same are without support.

Award affirmed.

CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.

RILEY, C. J., and ANDREWS, J., absent.