# BAKER v. WYCOFF

## (INDUSTRIAL COMMISSION, Intervener).

No. 5920.   Decided May 19, 1938.   (79 P. 2d 77.)

201

202

*Gardner & Latimer,* of Salt Lake City, for appellant.

*Shirley P. Jones,* of Salt Lake City, for respondent Baker.

*Shirley P. Jones* and *H. A. Rich,* both of Salt Lake City, for respondent Industrial Commission.

FOLLAND, Chief Justice.

The important question on this appeal is whether an insurance carrier who has paid compensation to an injured workman under the Industrial Compensation Act may maintain an action, under the provisions of section 42-1-58, R. S. Utah 1933, against a physician for alleged negligence in treating the workman. Plaintiff, Dennis A. Baker, is a workman who sustained a compensable injury in industry. He commenced this action against Dr. William T. Elliott for damages alleging negligence in diagnosing and treating the injury. The Industrial Commission, administrator of the State Insurance Fund, the insurance carrier, intervened and alleged the cause of action of the workman had been by statute assigned to it and that it was subrogated to the rights of the workman by reason of having paid compensation, including hospital and medical expenses, covering both the

original injury and additional injury or aggravation of the original injury by negligence of the doctor. The trial court sustained defendant's demurrer to plaintiff's complaint. We are not required to review the court's action in this respect by any cross-appeal or assignment of error, and may assume for the purpose of this case that the ruling was correct. The intervener, the Industrial Commission, recovered judgment against the physician in a sum larger than necessary to make it whole for money paid and to be paid on its liability to the workman. Pending the appeal, Dr. Elliott died, and the administrator of his estate was substituted as defendant and appellant.

The record discloses the facts to be that on December 9, 1933, Baker suffered an injury by accident in the coal mine of the Mutual Coal Company in Carbon county. A mass of coal, weighing about 500 pounds, fell from the roof, hitting him and knocking him to the floor, part of the coal pinning his left leg to the ground. He was given aid at the camp by Dr. Reese, an employee of Dr. Elliott, the company physician, and was taken as soon as possible to the Price Hospital where Dr. Elliott took charge of the case. The physician palpated the muscles of the hip, made measurements of the leg, and took X-ray pictures of the pelvic region. The diagnosis made was dislocation of the hip joint which had been reduced. The treatment given was on the assumption that the diagnosis was correct. The patient's legs were bandaged together at the knees and ankles, and the patient put to bed. Another X-ray picture was taken on December 15th. The patient complained of pain during the entire time he remained in the hospital and later. The pain should have abated within a few days had there been a dislocated hip which had been reduced. This condition was apparently the reason for taking the picture on December 15th. The doctor stated he could not find any evidence of fracture of the neck of the femur, but suspected a fracture of the glenoid. In February the patient was allowed to go on crutches, commencing at first for about ten minutes each day, which

period was gradually extended. He left the hospital in May, walking on two crutches and bearing some weight on the left leg. At that time, with the defendant's permission, he purchased an automobile and practised manipulating the clutch with his foot. In May he went to California where he continued to use his leg and did some farm work such as hoeing and irrigating. In August he returned to Helper, Utah, walking with two canes. He there consulted Dr. Elliott who took another X-ray picture. The physician concluded the man had really suffered a fracture of the bone at the neck of the femur, but thought he could see evidence of callous and "thought probably he would get a fairly serviceable fibrous union." No change in treatment was prescribed. Baker wanted to go back to California and the doctor told him he could go, but to continue the use of the leg as he had been doing. Pain in the leg persisted, and there was some looseness at the left hip joint. The left leg was shorter than the other and had been for some time. Baker came back to Helper in November and in that month consulted the Industrial Commission at Salt Lake City. He was sent by the commission to Dr. Lawrence N. Ossman who made an examination and had X-ray pictures taken. Dr. Ossman found that there had been a fracture at the neck of the femur and that the bone had not reunited. An operation was performed. There was found an ununited fracture at the neck of the femur with almost complete absorption at the neck and a small devitalized shell representing the head of the femur. The operation was what is called a reconstruction operation. After five months in the hospital, Baker was released and has gradually been getting better, but is left in a partially disabled and crippled condition which will be permanent. He is not physically able to perform difficult manual labor and cannot continue his occupation as machine man in an underground coal mine. Had his injury been accurately diagnosed in the beginning and proper treatment given for the fracture, there would have been a fair chance for complete recovery within six to nine months' time.

The questions raised by the 30 assignments of error may be for convenience grouped under 4 heads: (1) Has the insurer, the intervener, the legal right to maintain this action? (2) Do the facts found by the court constitute actionable negligence on the part of the physician? (3) Is the judgment valid where it includes a sum greater than necessary to pay the insurer the amount paid and to be paid under its liability? And (4) was certain evidence erroneously admitted?

The answer to the first question must be found in an interpretation of section 42-1-58, R. S. 1933, which reads as follows:

"When any injury for which compensation is payable under this title shall have been caused by the wrongful act of a third person, the injured employee or in case of death his dependents, may at their option claim compensation under this title or have their action for damages against such third person; and, if compensation is claimed and awarded, the employer or insurance carrier having paid the compensation shall be subrogated to the rights of such employee or his dependents to recover against such third person; provided, if such recovery shall be in excess of the amount of the compensation awarded and paid, then such excess, less the reasonable expenses of the action, shall be paid to the employee or his dependents."

The first inquiry is whether the negligence of the physician is an injury for which compensation is payable under the statute. The answer must be in the affirmative, as it seems well settled that, where the chain of causation between an accidental injury and the ultimate disability remains unbroken, an injured employee is entitled to statutory compensation for the ultimate injury resulting from the accidental injury, though the injury has been aggravated by intervening malpractice. The treatment of the original injury by a physician is within the chain of causation. *Gunnison Sugar Co.* v. *Industrial Comm.*, 73 Utah 535, 275 P. 777; *Hughes* v. *Maryland Casualty Co.*, 229 Mo. App. 472, 76 S. W. 2d 1101; *Booth & Flinn, Ltd.*, v. *Cook*, 79 Okl. 280, 193 P. 36; *Barnsdall Refining Co.* v.

*Ramsdall,* 149 Okl. 99, 299 P. 499; *Oleszek* v. *Ford Motor Co.,* 217 Mich. 318, 186 N. W. 719; *Williams* v. *Dale,* 139 Or. 105, 8 P. 2d 578, 82 A. L. R. 922; *Parchefsky* v. *Kroll Brothers,* 267 N. Y. 410, 196 N. E. 308, 98 A. L. R. 1387; *McDonough* v. *National Hospital Ass'n,* 134 Or. 451, 294 P. 351; *Lakeside Bridge & Steel Co.* v. *Pugh,* 206 Wis. 62, 238 N. W. 872; *National Rolling Mill Co.* v. *Kish,* 80 Ind. App. 331, 139 N. E. 454; *Bidnick* v. *Armour & Co.,* 113 Kan. 277, 214 P. 808; *Hornetz* v. *Philadelphia & R. Coal & I. Co.,* 277 Pa. 40, 120 A. 662; *Vatalaro* v. *Thomas,* 262 Mass. 383, 160 N. E. 269; *Ross* v. *Erickson Const. Co.,* 89 Wash. 634, 155 P. 153, L. R. A. 1916F, 319; 71 C. J. 641. See, also, note in 39 A. L. R. 1276, and cases cited therein.

Baker was entitled to claim, and actually received from the insurance carrier, full compensation, including hospital and medical treatment, for his injury caused by the accident in the mine as aggravated by the claimed negligence of the physician. Baker accepted compensation both before and after he became aware of the negligence of the physician. He must, therefore, be held to have elected to take compensation under the act. Any right of action he had passed, under the statute, to the insurance carrier, who was by law subrogated to the rights of the workman. *McDonough* v. *National Hospital Ass'n,* supra; *Parchefsky* v. *Kroll Brothers,* supra; *Jordan* v. *Orcutt,* 279 Mass. 413, 181 N. E. 661; *McDonald* v. *Employers' Liability Assur. Corporation,* 288 Mass. 170, 192 N. E. 608; *Polucha* v. *Landes,* 60 N. D. 159, 233 N. W. 264; *Overbeek* v. *Nex,* 261 Mich. 165, 246 N. W. 196; *Vayda* v. *De Witt,* 261 Mich. 165, 246 N. W. 199; 71 C. J. 1547, 1615.

The next question is whether the physician is such a third person as is contemplated by the statute, as it is only the wrongful act of a third person which gives rise to a cause of action in favor of the insurance carrier. Appellant contends that the statute was intended to cover only cases where the original injury was caused through negligence of a third person, and therefore a physician who treats the original

injury is not such a third person. Unless the appellant in this case (or more accurately, the deceased, for whom the appellant is the administrator) is a third person under section 42-1-58, R. S. 1933, the insurance carrer who has paid compensation for aggravated injuries caused by the negligence of the deceased doctor will not be subrogated to any rights of the injured party so as to be able to sue for the aggravation of his injuries caused by the negligence of the doctor.

There have been a number of cases holding that a doctor is liable to an employer, or the insurance carrier, as the case may be, for aggravated injuries to an employee who has already been injured, where the aggravated injuries were due to the doctor's malpractice, if the employer has paid compensation to the employee for such injuries and thereby become subrogated to the rights of the employee against the doctor for his negligent practice. *Jordan* v. *Orcutt,* 279 Mass. 413, 181 N. E. 661 (where an insurance carrier was allowed to recover for pain and suffering of an employee resulting from the physician's negligent treatment, the insurer having paid compensation to the employee) ; *Parchefsky* v. *Kroll Brothers,* supra. There the court said that, if the employee elects to take compensation where the compensable injury is aggravated by negligent treatment, the employer becomes subrogated to the employee's right of action against the physician; otherwise, if the employee elects to sue the physician, the employer is liable for compensation only for the injury apart from the result of the malpractice. Other cases holding the employee's right of action passes to the insurance carrier are *Polucha* v. *Landes,* supra, *Overbeek* v. *Nex,* 261 Mich. 156, 246 N. W. 196, and *Vayda* v. *De Witt,* 261 Mich. 165, 246 N. W. 199.

But in neither of these cases was the problem of who is a "third person" discussed by the court. This problem in compensation cases has been discussed by courts under statutes similar to but not identical with ours. These courts

have held that anyone, other than the immediate employer and employee concerned, is a third person and may be liable to the injured employee for injuries sustained through the negligence of the other. *Boyd* v. *Humphreys,* 117 Neb. 799, 223 N. W. 658; *McGonigle* v. *Gryphan,* 201 Wis. 269, 229 N. W. 81; *Behr* v. *Soth,* 170 Minn. 278, 212 N. W. 461; *Churchill* v. *Stephens,* 91 N. J. L. 195, 102 A. 657; 19 A. L. R. 793; *Zimmer* v. *Casey,* 296 Pa. 529, 146 A. 130; *Travelers Ins. Co.* v. *Evans,* 101 Vt. 250, 143 A. 290; *Sloan* v. *Harrington,* 117 Neb. 809, 223 N. W. 663, writ of certiorari denied in 280 U. S. 516, 50 S. Ct. 65, 74 L. Ed. 586; *Artificial Ice & Cold Storage Co.* v. *Waltz,* 86 Ind. App. 534, 146 N. E. 826; *Sylcox* v. *National Lead Co.,* 225 Mo. App. 543, 38 S. W. 2d 497; *Webster* v. *Stewart,* 210 Mich. 13, 177 N. W. 230. See Note in 67 A. L. R. 249, 276, and cases cited therein.

In *Zimmer* v. *Casey,* supra, the court, in holding a fellow servant to be a "third person" within the statute, stated (page 133):

"The Compensation Law did not write a contract between two servants through the common master. When the term 'third party' is mentioned in the Workman's Compensation Act, it means any person other than the master, or those whom the act makes master, and the employee who is seeking compensation under their agreement. The act is careful to preserve the status of a third person by not defining the term; so the presumption must be that the law as to third persons in every respect stands as it was before the act."

There are two cases, however, which seem to interpret the term "third person" differently. In both of these cases a doctor was being sued for the aggravation of an injury received by an employee for which compensation was allowed. *Paine* v. *Wyatt,* 217 Iowa 1147, 251 N. W. 78, and *Hanson* v. *Norton,* 1937, 340 Mo. 1012, 103 S. W. 2d 1. In the Iowa case the plaintiff, an employee, was suing the doctor under a workmen's compensation statute, which provided:

"When an employee receives an injury for which compensation is payable under this chapter, and which injury is caused under circumstances creating a legal liability against some person other than the

employer to pay damages, the employee or his dependent, or the trustee of such dependent, may take proceedings against his employer for compensation, and the employee or, in case of death, his legal representative may also maintain an action against such third party for damages." Code 1931, § 1382.

Under this statute the court held (page 80) that the test of whether the doctor was liable was "whether the plaintiff is really proceeding against the wrongdoer who inflicted the original injury and who is therefore liable for all the injury suffered by the plaintiff." The court said the term "the injury," used in the above section, referred to "the original or substantive injury which caused the disability of the plaintiff." The court concluded the plaintiff had a right "only to proceed against the wrongdoer who inflicted the original injury and none other; that he might recover his full damage from such wrongdoer; that no right was thereby conferred upon him to proceed against the surgeon." This interpretation arises under a statute which, as noted above, is quite different from ours. The Iowa case was followed by the Missouri court in *Hanson* v. *Norton,* supra.

The question then remains whether this court should construe the term "third person" as used in our statute to mean that any person other than the employee and immediate employer is a "third person" or whether such person must have been the cause of the original injury before he can be designated as such. The above cases are not directly in point. But irrespective of that, the physician must be held a "third person" under the decision of this court in *Gunnison Sugar Co.* v. *Industrial Comm.,* supra, and the other cases heretofore cited, to the effect that the compensation liability referred to in the statute is not limited to compensation for the initial injury but includes also expense and disability caused by acts of other persons if within the chain of causation. In the Gunnison Sugar Case the extra expense which the insurer paid arose out of treatment by the physician.

At common law the employee had a right of action against the doctor for malpractice where negligence of the physician aggravated the original injury. The person causing the original injury and the physician who aggravated its condition were not regarded as joint tort-feasors. The position, however, of two independent joint tort-feasors is in many respects analogous. Action might be brought and recovery had against the original party and another action against the physician for the damage caused by his negligence. Our statute recognizes and preserves the common-law right of action in the employee against a third person causing an injury, but, where such is within the chain of causation and aggravates or adds to the original injury, it becomes part of the injury for which compensation may be paid. The option is left with the employee as to whether he will claim compensation for his injury or maintain his common-law right of action against the physician. On broad grounds of furthering substantial justice conducive to better social relationships and to guard against injustice which might result from a double recovery by the employee, the statute provides that the employer or the insurance carrier who pays compensation is subrogated to the rights of the employee where the employee has exercised his option and taken compensation. The statute contemplates that a wrong-doer shall not go unwhipped of justice.

Appellant cites a number of cases to the effect that the employee cannot recover from a physician for malpractice, but in all of them the employee had already received compensation. Such decisions really amount to this, that double payment will not be allowed for the same injury. These cases are not decisive of the right of the insurer to maintain this action, although they hold that the award of compensation may properly cover both the original injury and the ultimate condition, including aggravation caused by negligence of the physician; and where the employee accepts compensation, he may not sue the physician and recover against him also. *McDonald* v. *Employers' Liability Assur.*

*Corporation,* 288 Mass. 170, 192 N. E. 608; *Hughes* v. *Maryland Casualty Co.,* 229 Mo. App. 472, 76 S. W. 2d 1101; *Alexander* v. *Von Wedel,* 169 Okl. 341, 37 P. 2d 252; *Overbeek* v. *Nex,* supra.

We conclude, therefore, that the physician is a third person under the statute; that the insurance carrier, having paid compensation to the employee for the injury suffered in the mine accident, together with the aggravation caused by negligent treatment by the physician, became subrogated to the rights of the employee as to any cause of action the employee had against the third party physician.

We are at some loss to know how to approach the second argument of the appellant, to the effect that the diagnosis made and treatment given plaintiff by the doctor conformed to the standard of skill which a reasonable physician practicing in the same locality would have used. The argument is made under assignments of error Nos. 26 to 30, inclusive. These assignments are that the court erred in receiving the proposed findings of fact and conclusions of law from plaintiff, erred in rejecting defendant's proposed amendments, erred in signing the findings of fact and conclusions of law, erred in entering judgment, and also erred in denying the motion for a new trial. No specific finding of fact is attacked by any assignment of error. Nor by any assignment is it pointed out wherein any of the findings are not supported by the evidence. Nevertheless, appellant's argument is made on the theory that the findings do not find support in the evidence. This being a law case, tried to the court without a jury, no finding of fact will be disturbed by this court if there is substantial evidence to support it. *Wilson* v. *Salt Lake City,* 52 Utah 506, 174 P. 847; *Carlquist* v. *Quayle,* 62 Utah 266, 218 P. 729; *Hanson* v. *Greenleaf,* 62 Utah 168, 218 P. 969; *Beaver Drug Co.* v. *Hatch,* 61 Utah 597, 217 P. 695; *Bear River Valley Implement Co.* v. *Jensen,* 61 Utah 100, 211 P. 186; *Booth* v. *Nelson,* 61 Utah 239, 211 P. 985. While there is conflict in the evidence touching the question of the negligence of the

physician we are satisfied that there is substantial competent evidence to support the trial court's findings that the "defendant unskillfully and wrongfully failed to properly diagnose and ascertain the extent and character of the injury to said Baker." That his diagnosis was clearly wrong was shown by later developments and defendant's own admissions. The treatment he gave would have been proper for the condition which he at that time believed to exist, but not for the fracture of the neck of the femur which was shown to have been the actual condition from the beginning. True, the burden was on the respondent to show that the doctor in his diagnosis and treatment of the employee did not exercise such reasonable care and diligence as is ordinarily exercised by physicians in the same locality. *Baxter* v. *Snow,* 78 Utah 217, 2 P. 2d 257; *Coon* v. *Shields,* 88 Utah 76, 39 P. 2d 348. The trial court found that the doctor did not use such reasonable care in handling the case. This finding is well supported by evidence. It is argued that the doctor made an honest mistake of judgment and is therefore not liable. The cases teach that, if he arrived at his judgment through failure to use ordinary care or skill, or was guilty of misattention or neglect, it makes no difference that he is honest; he is liable nevertheless. *Everts* v. *Worrell,* 58 Utah 238, 197 P. 1043.

A number of errors are assigned to rulings of the court in admitting testimony on the ground that the witnesses, physicians, were allowed to testify to the question of ultimate legal liability. The utlimate question in this respect was whether Dr. Elliott had applied the standard of skill which would have been used by the ordinary skillful physician under the circumstances in the same or similar locality. A typical question asked by respondent and objected to by appellant is the following:

"Q. Doctor, having in mind the photographs which you have seen of this man, taken on December 9th and December 15th, 1933, and assuming that he was injured by being struck with a large lump of coal, weighing several hundred pounds, so that it knocked him to the

ground; he dragged himself to his feet, and could not stand on his feet, and fell down, and he went dizzy, things went black; he had some pain in the region of the hip, but generally numb: In your opinion would the average practitioner, in such a community, having these films before him, having them taken under his orders or direction, what, in your opinion, would the average practitioner have diagnosed as the injury to this hip?"

Objection was made to this question on the grounds that it was incompetent, irrelevant, and immaterial, and "It is a hypothetical question of a nature which calls upon this witness to pass on the very question of the negligence in this case, which is the ultimate question for the court to decide." Other similar questions were propounded to witnesses and similar objections were made. The province ▉ of the jury was not invaded by such questions. The physician was not asked whether in his opinion the conduct of defendant was negligent or if his diagnosis of the injury indicated a failure to use due care. Such were for the jury. The line of distinction between what is or is not proper may not be wide; but here examining counsel kept within the bounds of proper form. In the question we have quoted as typical, the examiner has stated the hypothetical facts and then asked the medical expert what in his opinion "would the average physician have diagnosed as the injury to his hip." It was permissible to allow the medical witness to answer such question. He could testify what an ordinary physician of the locality, holding himself out as able to read X-ray pictures, could or should have seen in such pictures, and what would be the diagnosis of the case from the symptoms of the patient, history of the accident, and a reading of the pictures. *Wilcox* v. *Crumpton*, 219 Iowa 389, 258 N. W. 704, 705 (wherein the court held it was error not to allow the defendant, who was a witness for himself, to testify as to what the "usual and ordinary practice of physicians and surgeons in Webster City and similar communities, at that time" was in the treatment of such a fracture as was involved in that case) ; *Wojciechowski* v. *Coryell*,

Mo. App., 217 S. W. 638; *Jenkins* v. *Chase*, Mo. Sup., 53 S. W. 2d 21; *Baker* v. *Langan*, 165 Iowa 346, 145 N. W. 513; *Lehman* v. *Knott*, 100 Or. 59, 196 P. 476; *Hamilton* v. *Kelsey*, 126 Or. 26, 268 P. 750; *Hier* v. *Stites*, 91 Ohio St. 127, 110 N. E. 252. In the latter case, the court said (page 253):

"It would seem to be clear that a proper course to be followed in the determination of the question whether the average or proper degree of care, skill, and diligence has been exercised in a particular case is to ascertain the ordinary and proper method in such cases, and then whether such method was followed in the case on trial."

He could answer what is or what is not proper practice or the correct diagnosis under the circumstances. *Brewer* v. *Ring*, 177 N. C. 476, 99 S. E. 358; *Wood* v. *Vroman*, 215 Mich. 449, 184 N. W. 520; *Laughlin* v. *Christensen*, 8 Cir., 1 F. 2d 215; *National Automobile Ins. Co.* v. *Industrial Acc. Comm.*, 132 Cal. App. 373, 22 P. 2d 568; *Thomason* v. *Hethcock*, 7 Cal. App. 2d 634, 46 P. 2d 832; *Updegraff* v. *Gage-Hall Clinic*, 125 Kan. 518, 264 P. 1078; *Schamoni* v. *Semler*, 147 Or. 353, 31 P. 2d 776; *McCoy* v. *Clegg*, 36 Wyo. 473, 257 P. 484; *Bockoff* v. *Curtis*, 241 Mich. 553, 217 N. W. 750; *Darling* v. *Semler*, 145 Or. 259, 27 P. 2d 886. See, also, *Boyce* v. *Brown, Ariz.*, 77 P 2d 455; 4 Wigmore on Evid., 2d Ed., 454, 455, to a similar effect.

In *Taylor* v. *Kidd*, 72 Wash. 18, 26, 129 P. 406, the court decided a similar question, saying (page 407):

"The respondent was permitted, over the objection of the appellant, to propound to his expert witnesses certain questions containing a summary of the facts the evidence on his part tended to establish concerning the treatment accorded the respondent by the appellant, and an inquiry whether the treatment thus accorded was such treatment as an ordinarily skillful physician, practicing in the community in which the appellant practiced, would bring to the care of such an injury. This is assigned as error, because, it is argued, it allows the witness to determine the very question the jury is impaneled to determine. But we think the questions not objectionable on the ground stated. The question whether the treatment accorded the respondent's injury by the appellant came up to the standard of ordinary care and skill was not a question within the knowledge of the persons of ordi-

nary learning and experience, and hence a jury selected from such persons could not know from the mere description of the treatment whether or not it was reasonably careful and skillful. It was therefore proper to call on persons, learned in the particular science and familiar with the proper practice in like cases, to state whether in their opinion the treatment met the prescribed standard, and this even though the question whether or not it does meet the required standard is the ultimate question for the jury to determine."

Another group of assignments touches the point that the court erred in admitting evidence respecting the operation performed by Dr. Ossman after he found the hip was fractured and there had been no union. This evidence would seem to be relevant and offered for the purpose of showing the result of the negligent diagnosis and treatment of the physician, if found to be negligent, and to furnish a part of the grounds on which to base damages. It was not disputed that the operation was necessary.

Intervener offered in evidence Exhibits 14 and 15, being letters from the Mutual Coal Company to the State Insurance Fund. They furnish the basis for computing the compensation to which Baker was entitled. Objection to their admission on the grounds they were irrelevant and immaterial should have been sustained. There could, however, be no prejudice to defendant by admitting them, and their admission served no purpose except to lengthen the record. Even had the case been tried to a jury, it is difficult to see how the erroneous admission of this evidence could in any way prejudicially affect the rights of the defendant. The same can be said of other errors assigned on rulings of evidence. Even if there was error in permitting some of the evidence to be introduced, it had no effect except to lengthen the record. That is not sufficient justification to extend this opinion by further discussion.

The last question before us is to determine if the Industrial Commission may hold a judgment for a greater sum than it is out of pocket on account of payment of compensation, including hospitalization and medical expenses, for

the purpose of paying such excess to the injured employee. The objection is twofold: (1) The judgment is excessive in any event; and (2) the judgment is in excess of the "out of pocket" liability of the insurer.

The statute takes care of the second objection and clearly provides that any sum obtained by judgment against the third person tort-feasor, in excess of compensation awarded and paid, shall be paid to the employee. The statute recognizes the right of the employee to recover for the negligent injury, but, for purposes of protecting the insurer and avoiding double payment for the same injury, provides for subrogation and gives the insurer control of the action. It also recognizes the right of the employee to have recovered for and on his behalf, if just and so found by the court, a judgment larger than merely enough to recompense the insurer for compensation paid. This is consistent and just. The liability of the employer and insurance carrier accrues because of an accidental injury arising out of or in the course of employment. It does not depend on or arise out of negligence of the employer. The statute has provided a new remedy for injury in industry instead of the common-law remedy for negligence. The right of action against the physician for negligence is a common-law right which is not taken away from the victim of such negligence, but preserved to him, subject to the condition imposed by statute that, if he elects to accept compensation, and is paid such compensation, the right of action passes to the employer or insurer who has paid compensation. If an injured employee elects to sue the physician, without accepting compensation, he is not limited in the amount of his recovery by anything in the Industrial Act. One purpose of this provision is to compensate the employer or insurer for payments made by either of them on account of injury resulting from negligence of a third party. By electing to take compensation the employee is assured payment to him, as a minimum, of the amount provided by the Industrial Act. He may thereby cast on the employer or insurance carrier

the risk of recovery. Only to this limited extent in his common-law right of action for negligence of a third person interfered with.

The plain meaning of the statute is that the employee is entitled to the sum recovered, if any, over and above the amount of compensation paid by the insurer. *Jordan* v. *Orcutt,* supra; *Maryland Casualty Co.* v. *Huffaker's Adm'r,* 227 Ky. 358, 13 S. W. 2d 260.

We cannot say the amount of the recovery is disproportionate to the injury. The ascertainment of damages is for the jury in a case such as this, but here the parties waived a jury and tried the cause to the court. In determining whether the amount found as damages is excessive, the same standards would apply as if the amount were found by verdict of a jury instead of a finding by the court. The rule established by decision of this court is that the verdict will not be disturbed unless "the facts are such that the excess can be determined as a matter of law, or that the verdict is so excessive as to shock one's conscience and to clearly indicate passion, prejudice, or corruption on the part of the jury, and that the trial court, in passing on the question, clearly abused its discretion in permitting the verdict to stand." *Morgan* v. *Ogden Union Ry. & Depot Co.,* 77 Utah 325, 294 P. 541, 544. Here the injured employee is permanently disabled and he can never pursue his occupation as machine man in a mine. His left hip is shorter than the right one, and he will probably always have to use a cane in walking. While not totally disabled, he will necessarily be much restricted in the work he is able to do.

The judgment of the district court is affirmed, with costs to respondents.

HANSON, WOLFE, and LARSON, JJ., concur.

MOFFAT, Justice (concurring).

I concur except I think the objection to the hypothetical question should have been sustained.