356 P.2d 356 (1960)
In the Matter of the Death of Orville J. GREER.
Opal GREER, Petitioner,
v.
SINCLAIR PIPE LINE COMPANY and the State Industrial Court, Respondents.
No. 38722.
Supreme Court of Oklahoma.
October 25, 1960.
H.H. Sizemore, Speir, Stroberg & Sizemore, Newton, Kan., David J. Morrison, Oklahoma City, for petitioner.
Clayton B. Pierce, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.
*357 JOHNSON, Justice.
Orville J. Greer, deceased, underwent surgery for the repair of bilateral inguinal hernia sustained by him in an industrial accident on February 14, 1956, while in the employ of the Sinclair Pipe Line Company. Dr. G., a physician selected by the employer, performed the operation in Oklahoma City on March 2, 1956. It lasted ninety minutes. During the surgical procedure no abnormalities were noted. The heart, lungs and blood pressure functioned normally throughout, and no "untoward reaction of any sort" was encountered. On the third day he was up on his feet over short periods of time. Nine days after the operation, he was fully ambulatory and was released from the hospital and traveled by automobile to his home in Caney, Kansas. Slightly over four weeks after surgery he began to drive a car and do some light work.
Throughout his convalescence the deceased felt generally weak. He did not think he was improving and regaining strength. A part of each day he spent resting in bed. His breath was short. When walking, he held his right side and often massaged the right leg. In the course of frequent coughing he expectorated what *358 was described as "dark brown stains." Prior to the operation he had been an energetic, healthy and industrious man.
In the early part of May he was seen by Drs. G. and S. who examined him on separate occasions. Both found his recovery progressing normally and satisfactorily, although the incision on the right side was still sore and tender. They advised that he could return to normal duties in the forepart of June. Dr. S. suggested he report for work on June 2 and then take one month's vacation before resuming regular employment.
In the forenoon of June 13, 1956, the deceased performed some work which consisted of applying small quantities of weather-proof sealing paste upon the roof of his cottage at Lake Hulah. After lunch he went to his bedroom. A short while later he called his wife. When she entered he was kneeling on the bed with his face down. His head and neck were dark blue or purple. He was gasping for air. Ten to fifteen minutes later he died.
The presence of a causal connection, if any, between decedent's death and his antecedent herniorrhaphy (hernia repair) formed the decisive issue under the evidence adduced before the State Industrial Court in the proceedings brought by the widow. Claimant's expert witnesses attributed the fatality to a massive pulmonary thrombo-embolism. The condition was described as a post-operative complication believed to arise from the trauma incident to surgical procedures. These physicians related that the deceased died within the period of time during which such pathology may develop following an operation. They based their conclusion to an appreciable degree, if not entirely, upon several research studies recently published by eminent medical scholars. Drs. G. and D., who gave testimony for the employer, were of the opinion that the deceased succumbed to a fatal heart attack, either spontaneous or precipitated by causes entirely disconnected from and unrelated to the hernia accident and its repair.
The State Industrial Court denied an award based on the following finding:
"The death of decedent, Orville J. Greer, was due to heart failure as a result of pre-existing disease and natural causes and was in no manner related to nor connected with his hernia accident and surgical operation."
Claimant contends that the order is entirely unsupported by competent medical evidence and argues that the finding of the trial tribunal rests solely on expert testimony of a conjectural, speculative and equivocal character.
In the opinion of employer's medical witnesses (Drs. G. and D.) the lengthy time interval of nearly three and one-half months between decedent's successful surgery and his sudden death "removed the operation from the consideration of cause of his death." Pulmonary embolism, Dr. D. explained, does "follow" surgery, but it happens within "a few days or ten days" after the operation. The longest period of time between the two occurrences known to this witness from study and experience was twenty-one days. After this length of time, Dr. D. added, the possibility of pulmonary embolism "no longer exists."
It was Dr. G.'s opinion that from stand-point of medical causation the two events (surgery and death) were "ridiculously remote" from each other. He assigned these reasons for his conclusion: decedent's "prior good health according to his own statement, his normal response during and after surgery, his normal convalescence, the absence of complaint, and the time element of itself." Dr. D. ascribed the sudden fatality to an "acute heart attack * * *, a coronary attack or some other acute heart attack," while Dr. G. testified that the deceased had succumbed to coronary thrombosis. The tenor of their testimony excluded any post-operative complications as the causative factor of decedent's death. Although some complaints made by the decedent during his convalescence were not included in the hypothetical question propounded to Dr. G. and D., all the facts *359 favorable to claimant's theory were assumed by these physicians on cross-examination. They declined to change their opinion.
The testimony as outlined reflects a process of scientific evaluation based on consideration of patient's history and the medical factors involved. We find it free from speculation and conjecture.
Neither can we accede to claimant's contention that the finding below is unsupported by competent medical evidence because there is an entire absence of proof relative to any pre-existing heart pathology. Although expert witnesses for the employer did not reach any specific conclusion as to the cause of decedent's fatal heart attack to which they attributed his death, the tenor of their testimony is that it was either spontaneous ("due to natural causes") or precipitated by any of numerous predisposing factors having no relation to the hernia operation. It was not necessary that the trial tribunal determine and its order recite the precise cause of employee's death. The principal question in dispute was that of a causal connection, if any, between death and surgery. The finding made on this issue is amply supported by competent proof adduced. Crockett v. J & J Mining Co., 206 Okl. 177, 242 P.2d 133; Frye v. Secrest Pipe Coating Co. et al., Okl., 333 P.2d 559.
Claimant further argues that her evidence regarding the cause of decedent's demise is "conclusive." We are urged to vacate the order denying death benefits and direct the trial tribunal to enter an award in her favor.
An employer is liable under the Workmen's Compensation Act for all legitimate consequences of a compensable injury, including complications which may arise from surgery performed upon the workman to correct the condition sustained by him as the result of an industrial accident. Seismograph Service Corp. v. Cosby, Okl., 317 P.2d 215; Kelley v. Roger Givens Wholesale Millwork, Okl., 281 P.2d 944; Skelton Lead & Zinc Co. v. Bagby, 166 Okl. 214, 27 P.2d 168. Whether disability or death occurred due to the legitimate consequences of a compensable injury or was attributable to causes wholly unrelated thereto and disconnected therefrom, presents a question of fact for the determination of the State Industrial Court, whose finding on such issue, be it either in favor of or adverse to the claimant, is binding and conclusive upon this court on review, when based on competent evidence reasonably tending to support it. Lacy v. Pratt Food Stores et al., Okl., 347 P.2d 788; Ware et al. v. Wilson & Co. et al., Okl., 322 P.2d 204; Price v. Spartan Aircraft Co., Okl., 275 P.2d 705; Burba v. State Industrial Commission, 195 Okl. 344, 157 P.2d 199. In Ware et al. v. Wilson & Co. et al., supra, this court said [322 P.2d 205]:
"In Skaggs v. M. & W. Mining Co., 195 Okl. 423, 158 P.2d 722, 723, it is stated: `* * * Petitioner relies upon the rule that where there is sufficient evidence to support an award it will be sustained. As stated in Kemp v. Comar Oil Co., 185 Okl. 527, 94 P.2d 882, obviously such a rule has no application to situations where the fact has been resolved against the claimant as in the case at bar. * * *'"
In the instant proceeding both parties elicited competent evidence in support of their divergent theories of causation. The trial tribunal resolved the disputed issue of fact adversely to the claimant. It is neither the province nor the duty of this court to interfere with the finding on review. 85 O.S. 1951 § 26; Lacy v. Pratt Food Stores et al., supra; Sanders v. State Industrial Commission et al., Okl., 331 P.2d 478; see also Merrill v. State Industrial Commission, Okl., 290 P.2d 1095.
It is finally contended that the finding below is meaningless and too indefinite for judicial interpretation. Claimant relies on Butts v. Rose Drilling Co. et al., Okl., 304 P.2d 986; Cummins v. State Industrial Commission, Okl., 264 P.2d 721; Corzine v. Traders Compress, 196 Okl. 259, *360 164 P.2d 625, and other decisions of like import.
In the cited cases the trial tribunal failed in its function to determine the ultimate facts upon which the order was based. In the present proceeding the finding is clearly responsive to the decisive issue presented. It recites that decedent's fatal heart attack "was in no manner related to nor connected with his hernia accident and surgical operation." Similar language has been considered and approved in the former decisions of this court. Brandt v. Western Oklahoma Butane Co. et al., Okl., 346 P.2d 724; Ware et al. v. Wilson & Co. et al., supra; White v. Hale-Halsell Co. et al., Okl., 265 P.2d 470. It does not come within the inhibition of the rule invoked by the claimant. Mansfield v. Industrial Service Co. et al., 203 Okl. 384, 222 P.2d 373.
Order denying benefits sustained.