INTER-MOUNTAIN ASS'N OF CREDIT MEN v.
DAVIES.

No. 3826.   Decided March 27, 1923.   (214 Pac. 307.)

1. CORPORATIONS—RELINQUISHMENT AND SALE OF SHARES AND PUR-
CHASE BY ANOTHER HELD CONSIDERATION FOR RELEASE OF LIABIL-
ITY AS STOCKHOLDER.   Where defendant stockholder on the so-
licitation of others relinquished some of his shares in a corpora-
tion to a banker in order to have him connected with the cor-
poration, the relinquishment by defendant and purchase by the
banker was sufficient consideration to support an agreement
between the shareholders and the parties to the transaction re-
leasing defendant from his liability as shareholder and sub-
stituting the liability of the banker therefor.

2. CORPORATIONS—RELEASE OF SHAREHOLDER APPROVED BY ALL THE
OTHER SHAREHOLDERS HELD VALID.   Where defendant stock-
holder, at the solicitation of others, relinquished some of his
shares in order that a banker might be connected with the cor-
poration, and an agreement to release defendant from liability
as shareholder and to substitute the banker was approved by
all the stockholders except one who made no objection, *held*, in
view of the fact that the substitution was fully executed, that
the transaction was made in good faith and before the corpora-
tion had incurred any indebtedness, and that subsequent cred-
itors of the corporation were not injured thereby, the release
was valid, and defendant's liability as a shareholder ceased.

3. CORPORATIONS—RELEASE OF SUBSCRIPTION SUFFICIENT IF ABAN-
DONED BY MUTUAL CONSENT.   A release of a subscription to stock
in a corporation need not be express or formal, but it is suffi-
cient if the subscription is abandoned by mutual consent.

4. EVIDENCE—RELEASE OF STOCK SUBSCRIPTION MAY BE SHOWN BY
PAROL OR CIRCUMSTANTIAL EVIDENCE.   A release of a subscrip-
tion to stock in a corporation may be shown by parol or by cir-
cumstantial evidence.

Appeal from District Court, Third District, Salt Lake
County; *M. L. Ritchie*, Judge.

Action by the Inter-Mountain Association of Credit Men
against E. C. Davies.   From a judgment for defendant, plain-
tiff, appeals.

AFFIRMED.

*Thos. O. Sheckell*, of Salt Lake City, for appellant.

*Rich, Rich & Roberts*, of Salt Lake City, for respondent.

CHERRY, J.

Plaintiff, as assignee for the benefit of creditors of Barker System of Bakeries, a Utah corporation, brought this action to recover $2,000 from the defendant, alleged to be due as an unpaid subscription to the capital stock of plaintiff's assignor.

Defendant admitted the subscription, but pleaded that he had been released and discharged from the same, and that the stock subscribed for had been issued and sold to another, by the corporation.

The defendant had judgment, from which the plaintiff has appealed.

The evidence is without conflict, except as hereinafter noticed, and establishes the following facts:

Barker System of Bakeries was incorporated on February 24, 1919, by defendant and four others, with an authorized capital of $30,000, divided into 3,000 shars, one-half of which was subscribed by the incorporators, and one-half of which was reserved as treasury stock. The defendant's subscription was for 500 shares, of the par value of $5,000, upon which he paid the corporation $3,000.

At first the business was profitable and dividends were paid. On March 7, 1919, at an informal meeting of the principal stockholders, it was stated that Mr. Frank Pingree, a banker, desired to purchase stock in the corporation, and for the reason that it was thought desirable and for the good of the concern to have a banker connected with it, and at the solicitation of other stockholders, the defendant reluctantly agreed to surrender 200 shares of his subscribed stock, in order that it might be sold to Pingree. Thereupon a certificate for 300 shares, for which the defendant had

previously paid, was issued to him, and the remaining 200 shares subscribed by him, together with 100 shares surrendered by other stockholders, 300 in all, were sold to Frank Pingree, a certificate duly issued and delivered to him, upon which he paid the corporation $1,500, as part payment. Here arises the only conflict in the evidence. F. L. Copening, the president of the corporation, testified that he personally delivered the certificate to Pingree, who accepted it and paid $1,500 on account of it and promised to pay the remainder in a day of two; that at this time there were no creditors, the business was profitable, and the stock desirable. Pingree's testimony is to the effect that he only wanted 150 shares of stock, for which he paid, and that he kept the certificate for 300 shares because Mr. Copening told him to keep it and determine if he did not want it all, and that later he returned the certificate for 300 shares and obtained one for 150 shares.

It appeared by other testimony that Pingree retained his certificate for 300 shares of stock for over a year, during which time he became president of the corporation, and that after the corporation became insolvent, and after the defendant had severed his connection with the company, Pingree canceled his certificate for 300 shares and procured one for 150 shares.

The trial court found as a fact that the corporation had released and discharged the defendant from his subscription, in consideration of the defendant relinquishing the same in order that the stock subscribed for might be sold to Frank Pingree; that the defendant pursuant thereto did relinquish the stock; and that it was sold by the corporation to Frank Pingree and a stock certificate therefor was issued and delivered to Frank Pingree on or about March 8, 1919.

This finding is assailed by appellant for the reasons: (1) That no consideration is shown for the release; and (2) that the transaction was not had at a formal or legally assembled meeting of directors or stockholders, and that therefore the evidence is insufficient to support the finding.

Without pausing to inquire into the right of the plaintiff

to inquire into the transaction at all, under the circumstances, it is sufficient to say that the relinquishment of the stock by the defendant and the purchase of the same by Pingree constitutes sufficient consideration for the release of the former.

The agreement for the release was made informally between the stockholders, and the record satisfactorily shows the participation and approval of all the stockholders except Mary C. Pingree, who had subscribed for 300 shares. It does not appear that she ever made objection to the transaction. It does appear that the agreement for the release of the defendant and the substitution of Pingree was carried out and fully executed and Pingree recognized as a stockholder and elected president of the company.

A release of a subscription need not be express or formal; it may be shown by parol or circumstantial evidence; and it is sufficient if the subscription is deemed abandoned by mutual consent. 2 Fletcher, Cyc. Corp. § 641; p. 1433.

It is not denied that the proceedings were had in the utmost good faith, without fraud, and before the corporation had incurred any indebtedness. It also appears that the means of the corporation to pay its subsequent creditors were not lessened, and that the plaintiff was not damaged by the transaction. This precludes plaintiff from recovering. *Burke v. Smith*, 16 Wall. (U. S.) 390, 21 L. Ed. 361.

The findings and judgment are amply supported both in fact and in law.

Judgment affirmed, with costs.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.