## CARLQUIST v. QUAYLE.

No. 3978.   Decided August 20, 1923.   Rehearing Denied October 1, 1923.   (218 Pac. 729.)

1.   CORPORATIONS—POWER OF OFFICER OR AGENT OF CORPORATION IS GOVERNED BY GENERAL LAW OF AGENCY.   The power of an officer or agent of a corporation to bind the corporation is governed by the general law of agency; the underlying principles being the same.

2.   CORPORATIONS—AUTHORITY OF OFFICERS OR AGENTS MAY BE IMPLIED FROM CONDUCT AND ACQUIESCENCE OF DIRECTORS.   Express authority by resolution directing officers or agents to represent the corporation in the execution of contracts is not indispensable to the exercise of that power, since their authority may be implied from their conduct and the acquiescence of the directors.

3.   APPEAL AND ERROR—IF FINDINGS ARE SUPPORTED BY SUBSTANTIAL EVIDENCE, APPELLATE COURT MUST AFFIRM JUDGMENT.   In a law action, the appellate court *held* under duty to affirm the judgment if there is substantial evidence to support the court's findings.

4.   CORPORATIONS—EVIDENCE HELD TO SUPPORT FINDING THAT AGENT OF CORPORATION WAS AUTHORIZED TO CONTRACT FOR CORPORATION.   Evidence *held* to support finding that L. was clothed with authority by plaintiff corporation to bind the latter in a contract made by L. with defendant under which the latter sold his stock to plaintiff.[1]

5.   CORPORATIONS—IF AGENT HAD NO AUTHORITY TO CONTRACT, CORPORATION MUST REPUDIATE CONTRACT WITHIN REASONABLE TIME.   If an agent was without authority to make a contract with defendant, it was the duty of the corporation to repudiate the contract within a reasonable time, or otherwise it would be presumed that the unauthorized contract had been ratified.

6.   CORPORATIONS—CORPORATION HELD TO HAVE RECEIVED NOTICE THAT ANOTHER WAS CLAIMING ITS PROPERTY.   Execution of mortgages in favor of defendant by purchasers of property belonging to plaintiff corporation, recording of such mortgages, and the payment of interest thereunder to defendant *held* notice to corporation defendant was claiming property as his own.

[1] *Inter-Mountain Ass'n of Credit Men* v. *Davies*, 61 Utah, 461, 214 Pac. 307.

Appeal from District Court, First District, Box Elder County; *M. C. Harris,* Judge.

Action by the Blue Creek Land & Live Stock Company against Philip Quayle, in which C. H. Carlquist, as receiver of plaintiff company, was substituted as plaintiff. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Le Roy B. Young,* of Brigham City, for respondent.

GIDEON, J.

This action was originally commenced by the Blue Creek Land & Live Stock Company, a corporation. At the date of the trial C. H. Carlquist, receiver of that corporation, was, by order of court, made plaintiff.

The action is for money had and received. It is alleged in the complaint that on or about October 1, 1919, the defendant became indebted to the Blue Creek Land & Live Stock Company in a sum named for money had and received by him for the use and benefit of said corporation; that the defendant had refused to pay the money or any part thereof to the corporation, although frequently requested so to do. The answer is a general denial. The court made findings in favor of defendant, and entered judgment dismissing the action. Plaintiff appeals.

The errors assigned relate to the findings that defendant did not become indebted to the Blue Creek Land & Livestock Company in the sum claimed, or in any sum, and that he did not receive money for the use and benefit of that company as alleged in the complaint. The court also found that defendant is the lawful owner of and entitled to the money sought to be recovered.

It appears from the testimony that the Blue Creek Land & Livestock Company was organized in the year 1903. The

authorized capital stock was $25,000, divided into shares of the par value of $10 each. The defendant was not one of the original incorporators, but became interested in the company by the purchase of stock from some of the original incorporators about the year 1905. Later he was elected a director, and, so far as the record discloses, never resigned that office. In the year 1915, on April 2d of that year, the corporation entered into a written contract with J. N. Larsen Company. That contract provided that the Larsen Company should have the exclusive right to sell all the property of the Blue Creek Land & Live Stock Company. The property therein enumerated was approximately 8,000 acres of land situated in Box Elder county, Utah, together with farming implements, horses, cattle, hogs, and growing crops—in fact, everything owned by the company at that time. It was stipulated that the Larsen Company should have the exclusive right to sell the property netting to the first party, the Blue Creek Land & Live Stock Company, the sum of $152,000. It also appears that one A. J. Nielsen, president, owned a majority of the stock of the corporation, and that the other stockholders, save the defendant and one other, were members of his family or relatives of his. The defendant testified that from the date of the contract with the Larsen Company no stockholders' or directors' meetings were held prior to the year 1919. There is some testimony to the contrary, but no record of any meetings was shown, and no minutes of any such meetings were produced or offered in evidence. The testimony is to the effect that during that time, so far as the corporation was concerned, its affairs were controlled by the then president, A. J. Nielsen. Mr. Nielsen testified to the contrary, but his testimony is not corroborated, and the court was justified in not giving it much credence. What was done by the Larsen Company after the execution of the contract in 1915 and prior to 1920 does not appear from the record. It appears, however, that defendant was unable to obtain any definite information as to the affairs of the live stock company, and became so apprehensive that in the year 1919 he caused notice to be served upon the Blue Creek Land & Live Stock Company requiring an accounting. In response to that

notice negotiations were opened or had between J. N. Larsen of the Larsen Company and defendant with a view to purchasing the stock defendant then had in the corporation. A proposition was submitted to the defendant, which he declined. Thereafter negotiations were renewed, resulting in an agreement. Larsen testified that he entered upon these negotiations at the request of the president of the live stock company, and was by him advised that he had authority to and did authorize him to conduct such negotiations. It also appears from this same witness' testimony that the president of the company was present at Brigham City on the date of the consummation of the negotiations and the closing of the deal with defendant. It likewise appears that the president was fully advised as to the agreement made, both before its consummation and afterwards, and gave his approval of the same. As a result of these negotiations the defendant deposited and left his stock with the president of the First National Bank of Brigham City, and received money belonging to the corporation in the sum of $3,176 and two notes secured by second mortgages on real property, aggregating something like $19,000. These amounts were arrived at by estimates supposed to represent the defendant's interest in the corporation. It also appears that prior to April, 1915, defendant had personally indorsed two notes of the corporation, and it was agreed that the stock left with the bank should be held by the officers of that bank until satisfactory evidence was furnished to defendant that the notes indorsed by him had been paid or that he had been released from any liability on those notes. The money was paid to the defendant in January, 1920. This suit was instituted February 11, 1922.

It is the contention of appellant, plaintiff below, that neither Larsen nor any other person was authorized by the corporation to enter into any agreement or arrangement with the defendant for the purchase of his stock, and that the money received by him, admittedly being the property of the corporation, can be recovered in an action of this nature. The question for determination is: Was Larsen, as repre-

sentative of the corporation, authorized to make a binding contract such as was made?

It is the contention of respondent (defendant) that the agent had authority to make the contract, and that if he had no such authority his acts were ratified by the corporation by acquiescence in the arrangement for a period of more than two years. There is no allegation in the complaint that the money or property received by defendant was or is necessary to pay creditors of the corporation, or that the defendant received any greater amount than he would have been entitled to receive upon a liquidation and dissolution of the corporation.

"The power of an officer or agent of a corporation to bind the corporation is governed by the general law of agency; the underlying principles are the same." 7 R. C. L. § 616, p. 620.

"Express authority by resolution directing officers or agents to represent the corporation in the execution of contracts is not indispensable to the exercise of that power. Their authority may be implied from their conduct and the acquiescence of the directors." Id. p. 621.

This is a law action. *Mader* v. *Taylor, Romney & Armstrong,* 15 Utah, 161, 49 Pac. 255. If, therefore, there is any substantial testimony in the record to support the court's findings, it is the duty of this court to affirm the judgment. The testimony is undisputed that J. N. Larsen, of the Larsen Company, was the authorized agent or representative of the corporation to dispose of all of its property. That authority, so far as this record discloses, has never been revoked, and was still in full force and effect at the date of the arrangement and negotiations carried on with the defendant. The testimony also shows that the president of the company had conducted the affairs of the corporation from the date of the contract in 1915 with the Larsen Company without consulting the board of directors, and without any interference on the part of such board. There is some testimony tending to show that the other stockholders, save the president and defendant, had disposed of their stock, and were no longer interested in the company, and consequently could not act as directors. That, however, is disputed by the testimony of the president of the company. That the presi-

dent knew of the negotiations and consummation of the arrangement made with the defendant is abundantly established. In that state of the record is this court justified in concluding that the acts of the agent were without authority binding upon the corporation? We are of the opinion that the facts justified the trial court in its conclusion that the agent was clothed with authority to bind the corporation in the contract and arrangement made with the defendant. *Garmany* v. *Lawton,* 124 Ga. 876, 53 S. E. 669, 110 Am. St. Rep. 207; *Inter-Mountain Ass'n of Credit Men* v. *Davies,* 61 Utah, 461, 214 Pac. 307.

Reliance is had by appellant upon the opinion of this court in *Lochwitz* v. *Min. & M. Co.,* 37 Utah, 349, 108 Pac. 1128, as supporting the claim that the president in this case was without power or authority to authorize the agent Larsen to make the contract in question. In that case there was no attempt to show that the president of the corporation was authorized to or had actually carried on and managed the business of the corporation. The authority to make the contract involved in that action was expressly granted to the president and secretary of the company by resolution of the board of directors. The appellant in that case claimed that an extension of the contract had been granted by the president alone. The testimony was undisputed that the secretary of the company was not advised that any extension had been granted. Neither was the corporation so advised. The original resolution in that case gave the president and secretary the only authority they ever had or claimed to have to enter into the contract in question. There was no claim or contention that either of such officers had any authority to bind the corporation by any general acquiescence in the manner of conducting the affairs of such corporation. The court rightly held that the president as such officer had no power to make a new contract or to grant an extension of the time for the purpose of fulfilling the terms of the contract made by him and the secretary under the resolution of the directors. In the instant case the president of the corporation had conducted its affairs without any meeting or action on the part of the directors for a period of four years. Larsen was the

agent of the company, and that fact was known to the defendant. Defendant was a party to the original agreement made in April, 1915. It was the duty of the corporation, if the agent was without authority to make the contract in the first place, to repudiate the contract within a reasonable time, and, upon failure so to do, the presumption is that the unauthorized contract had been ratified. *Hartwell* v. *Equitable Mfg. Co.*, 78 Kan. 259, 97 Pac. 432. That the corporation was cognizant of the contract made by Larsen and the defendant at the date the same was made is, in our judgment, not open to serious question. The president was present in Brigham City at the date of the negotiations, and, as stated elsewhere, was fully advised as to the details of the arrangement, and acquiesced in the same.

In addition to the money received by the defendant there were at the same time mortgages executed by purchasers of property belonging to the corporation to the defendant, and these mortgages were placed on record. The defendant received the interest on those mortgages from that time to the date of the institution of the suit, all of which would constitute notice to the corporation that the defendant was claiming the property as his own. Moreover, it appears that the parties purchasing from the corporation executed a first mortgage to the Federal Farm Loan Bank for part of the money paid on the purchase price of these lands. The money received by the defendant was part of the proceeds of the loan from this bank. The balance, presumably, went into the treasury of the Blue Creek Land & Live Stock Company.

Under all the circumstances we are constrained to hold that the acts of the agent of the corporation in making the contract with defendant were ratified by the corporation in failing to repudiate the same within a reasonable time, regardless of the authority of the agent to make the contract at the time it was made.

It follows that the judgment of the district court should be affirmed. Such is the order. Costs on appeal are taxed against appellant.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

FRICK, J., did not participate.