### MERRION et al. v. SCORUP–SOMERVILLE CATTLE CO. et al.
### No. 2595.

Circuit Court of Appeals, Tenth Circuit.

March 8, 1943.

Writ of Certiorari Denied June 1, 1943.

See 63 S.Ct. 1317, 87 L.Ed. ——.

---

S. J. Quinney, of Salt Lake City, Utah
(Robert L. Judd, Paul H. Ray, and A. H.

Nebeker, all of Salt Lake City, Utah, on the brief), for appellants.

Jesse R. S. Budge, of Salt Lake City, Utah (Clarence T. Ward, of Boise, Idaho, and Mitchell Melich, of Moab, Utah, on the brief), for appellee Scorup-Somerville Cattle Co.

Knox Patterson, of Salt Lake City, Utah, for interveners.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a summary judgment entered in favor of the defendant, the Scorup-Somerville Cattle Company, a corporation, in an action in the District Court of the United States for the District of Utah, in which the plaintiffs sought to recover damages for alleged breach of contract. The parties will be referred to as they appeared in the court below.

The complaint, in substance, alleged that the defendant corporation entered into an option contract with plaintiffs August 2, 1941, in which, for a consideration of $1,000, it gave plaintiffs an option to purchase on or before September 2, 1941, for $532,500, all of the ranch property of the defendant, consisting of both real and personal property, and all located in San Juan County, Utah; that within the time and terms of the contract, plaintiffs exercised the option to become bound by the terms thereof and within time tendered payment and requested defendant to convey and deliver the property; that defendant refused to perform the contract and repudiated the agreement.

The defendant answered, generally denying the allegations of the complaint. William K. Somerville and Annie Somerville, individually and as guardian of Richard D. Somerville, a minor, intervened and filed an answer. Their answer in substance alleged that they were stockholders in the corporation; that the special meeting of the stockholders which authorized the president to sell the property of the corporation was illegal because no legal, statutory notice thereof was given to the interveners and that the president of the company was without authority to enter into the contract upon which plaintiffs relied.

Defendant and interveners filed a motion for summary judgment. In support of their motion they filed the affidavits of the secretary of the corporation, the affidavits of a number of stockholders of the corporation, and the affidavits of Clarence T. Ward and J. A. Scorup. In opposition to the application for summary judgment, plaintiffs filed the affidavit of Russell Wilkins, in the main controverting the allegations of the affidavits filed by the defendant. The import of the affidavits of the stockholders is that they were not personally served with any notice of the purported meeting of the stockholders which authorized the sale of the assets of the corporation. The affidavit of W. R. McConkie, secretary of the corporation, recites that the following notice was mailed to each stockholder of the defendant company at his or her address:

"Dear Stockholder:

"There will be a meeting of the stockholders of the Scorup-Somerville Cattle Company at the home of J. A. Scorup, Moab, Utah, at 2:00 P. M., July 12th, 1941, to consider the offer to purchase the holdings of the Scorup-Somerville Cattle Company and any other or further business that may come before the stockholders. * * *"

The affidavits of Clarence T. Ward and Mitchell Melich relate to incidents which occurred during the process of the negotiations between the parties and which we do not consider necessary to the determination of the questions presented by this appeal.

The minutes of the special stockholders' meeting of July 12, 1941, as far as material, are as follows:

"The stockholders of the Scorup Somerville Cattle Company, met July 12th, 1941, with the Board of Directors; Present at the meeting were: J. A. Scorup; Annie Somerville; Veda Nelson, Harve Williams; Jas. M. Scorup; Edith Scorup; Andrew Somerville; Laura Scorup and Carroll Meador as proxy for W. K. Somerville; Edith Scorup proxy for Ellen Scorup; and W. T. McConkie, Clerk. * * *

"After some discussion, it was moved by Edith Scorup, and seconded by James Scorup, that the President be authorized to sell the holdings for $532,500, on range delivery, or tally the cattle over at $40. per head for all born prior to 1941, and a fair price for 1941 calves, $50 per head for 150 horses, $50. per acre for farm land, $3. per acre winter grazing land, $5. per acre for summer grazing.

"Motion carried, all voting 'aye' except Veda Nelson, who voted 'no.'"

■ Summary judgment could be entered only if it clearly appeared from the pleadings and the supporting affidavits that the special stockholders meeting was not legally called or that no binding contract was executed.

■ It is conceded that the charter of the corporation does not provide for the kind of notice which must be given of a special stockholders meeting. In the absence of such a provision, Sec. 18—2—41, R.S.Utah, 1933, determines the kind of notice which is necessary for such a meeting. In substance, so far as material herein, the section provides that notice of a special meeting "shall be given by personal service of the notice upon each such stockholder at least five days before the day fixed for the meeting, or by advertisement in some newspaper published in the state * * *." The only notice given was the written notice which was mailed to each of the stockholders. The defendants contend that this was not personal service of notice as required by law.

■ The term "personal service" has a well defined meaning, and is generally defined to mean what the words import, namely, notice personally given, and where written notice is required, it would ordinarily mean that the written notice must be served personally upon the one entitled to it. It is generally held that written notice by mail does not meet the requirement of a statute requiring personal service. However, the general meaning of the term may be limited, modified, or changed by statute, and it is therefore necessary in each instance to consult the statutes of the particular jurisdiction in which the question arises.

Section 104—43—2, R.S.Utah, 1933, provides that:

"The service may be personal by delivery to the party or attorney on whom the service is required to be made; or it may be as follows:

"(1) If upon an attorney, it may be made during his absence from his office by leaving the notice or other papers with his clerk therein, or with a person having charge thereof, or, when there is no person in the office, by leaving them, between the hours of 6 o'clock a. m. and 9 o'clock p. m., in a conspicuous place in the office, or, if it is not open so as to admit of such service, by leaving them at the attorney's residence, with some person of suitable age and discretion; or, if his residence is not known, by mailing as hereafter provided.

"(2) If upon a party, it may be made by leaving the notice or other paper at his residence, between the hours of 6 o'clock a. m. and 9 o'clock p. m., with some person of suitable age and discretion; or if his residence is not known, by mailing as hereafter provided."

Section 104—43—3 provides that: "Service by mail may be made when the person making the service and the person on whom it is to be made reside, or have their offices, in different places between which there is a regular communication by mail."

■■ Section 104—43—3 implements Section 104—43—2 and the two must be read together. Reading them in this way, it would appear that when the duty rests upon one to make personal service of a notice upon another living in the same city, he must actually deliver a copy thereof to him in person, but if they reside in different places between which there is a regular communication by mail, he may mail such notice, and it will constitute personal service. This seems to be the construction the Utah Supreme Court has placed upon these statutes in Greenwood v. Bramel, 54 Utah 1, 174 P. 637, 638. The question there was the sufficiency of notice to perfect an appeal. The statute required that "notice of the entry of judgment must be given to the losing party by the successful party either personally or by publication * * *."[1] The notice in question was served by mail and was objected to as insufficient because not constituting personal service. The court in its opinion said: "The second notice, in legal form, was served by depositing it in the United States post office at Salt Lake City, duly addressed to Warenski's counsel at Murray, on January 28, 1918. We think this was personal service of the notice on Warenski, as contemplated by Comp.Laws 1907, § 3331."[2]

■ It is our conclusion that under the laws and decisions of the Supreme Court of Utah, the notice of the special meeting of stockholders was given by personal service of notice.

[1] Compiled Laws 1907, §§ 3744, 3750.
[2] Section 3331 of the Compiled Statutes of 1907 is present Section 104—43—2, R.S. 1933. Section 3332, Comp.Stat. of 1907, is present Section 104—43—3, R.S. 1933.

On August 2, 1941, the Scorup-Somerville Cattle Company, by J. A. Scorup, gave plaintiffs the option contract which is the basis of this action. As far as material, the contract provided:

"That for and in consideration of the sum of $1,000 in hand paid, receipt of which is hereby acknowledged, Seller does hereby grant to the Buyer an irrevocable option to purchase of approximately 9,000 cattle branded (brands shown in original contract). All calves, horses, mules, other ranch stock, forest permits, Taylor grazing permits, leases, feed now on hand, or growing, trucks, pick-ups, automobiles, farm and ranching machinery, buildings, water rights, ditch rights, and any and all other property personal or real, now owned by the Seller and not specifically mentioned withheld for the total sum of $532,500.00 * * * [3]

"The method of purchase is to be selected by the Buyer on or before the first of September. When Buyer accepts option he agrees to make first payment of $74,000 on or before the first of September, which will make the total sum of $75,000. Further payment shall be made either on the basis of the delivery of cattle or the formal turning over of the assets of the Seller. If Buyer fails to go through with the purchase price of option payment shall be retained by the Seller as liquidated damages against the Buyer."

▉ It is urged by defendants that under Utah law[4] a sale of the assets of a corporation is valid only when first authorized by the board of directors and thereafter confirmed by a vote of the requisite number of stockholders. All this statute says is that a sale of the assets of a corporation by the board of directors is not binding on the corporation until confirmed by the stockholders. It does not say that the stockholders may not in the first instance authorize and direct the sale of the assets. A corporation belongs to the stockholders. The officers are merely the managing agents for the corporation. The powers of an officer or agent of a corporation to bind the corporation are governed by the general law of agency. Carlquist v. Quayle, Utah, 62 Utah 266, 218 P. 729; 7 R.C.L., Corporations, § 616, 13 Am.Jur., Corporations, § 889. The corporation could, as it did, direct the president to sell the assets of the corporation, and a contract executed by the president within the terms of the authority conferred would bind the corporation.

▉ It is true, as urged by defendants, that the option contract was not binding on the corporation because the president was not authorized to execute such a contract. It was, however, a continuing offer to sell and ripened into a binding contract when it was accepted in writing by the plaintiffs on August 27, 1941. Chournos v. Evona Inv. Co. et al., 97 Utah 335, 93 P.2d 450.

Defendants contend that the acceptance of the contract was conditional and therefore amounted to a rejection of the offer. The material part of the letter of acceptance reads as follows: "We, the undersigned, on this 27th day of August, 1941, hereby notify the Scorup-Somerville Cattle Company and its President, J. A. Scorup, that we hereby exercise Option No. 1, hereinbefore described, and we hereby tender to the Scorup-Somerville Cattle Company payment of the purchase price, as provided in said option, upon satisfactory and proper conveyance by the Scorup-Somerville Cattle Company to the undersigned of all of the assets owned by said company on the date of said option and thereafter, including 1000 acres, more or less, of irrigated land, 17,000 acres, more or less, of pasture land, 10,000 acres, more or less, of range land, approximately 9000 cattle, approximately 3000 calves, etc."

▉ The acceptance itself was unconditional and absolute. The most that can be said is that the tender of payment made at that time was conditional. The tender made was, however, of the full purchase price, not the initial payment of the $74,000 called for in the contract. Certainly when plaintiffs tendered the full purchase price they would be entitled to demand proper conveyance of the assets for which they were paying. But even if the acceptance in the letter of August 27 is held to be conditional, as contended for by defendants, it did not terminate the negotiations because all the parties to the transaction elected to continue them. They held a number of meetings and arranged a meeting for September 2. Plaintiffs appeared at this meeting in an armored car in which they had

---

[3] The contract contained an alternate option providing a different method for the payment of the property conveyed. This option is omitted because the first option was ultimately exercised.

[4] Sec. 18—2—16, Utah R.S. 1933, Subd. 7.

478

$74,000 in cash, which they attempted to tender to defendants.

 It is our conclusion that the issues presented by the pleadings could not be determined on a motion for summary judgment and that the court erred in entering such a judgment.

Reversed and remanded with instructions to grant a new trial.