**KNOX et al. v. FIRST SECURITY BANK OF UTAH, N.A., et al.**

No. 4587.

United States Court of Appeals
Tenth Circuit.

Aug. 5, 1953.

Peter W. Billings, Salt Lake City, Utah, for appellants (Beverly S. Clendenin and Fabian, Clendenin, Moffat & Mabey, Salt Lake City, Utah, with him on the brief).

Paul H. Ray, Salt Lake City, Utah, for appellee, Milner Corp. (Albert R. Bowen, Salt Lake City, Utah, with him on the brief).

Charles Welch, Jr., Salt Lake City, Utah, for appellee First Security Bank of Utah, N.A., executor of the estate of A. C. Milner (Clair M. Senior and Raymond T. Senior, Salt Lake City, Utah, with him on the brief).

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

When this case was here in 196 F.2d 112, Knox v. First Security Bank, we held the complaint with the attached 1909 contract and 1924 letter legally sufficient to show that by the 1924 letter A. C. Milner accepted and adopted the 1909 contract as president and on behalf of the Milner Corporation; and that his actual authority to do so was an issue for determination on the merits. As against the contention that the original contract was ultra vires for lack of consideration to the corporation, we thought the allegations to the effect that Knox suffered a detriment and the corporation derived a benefit in furtherance of its pecuniary interest not open to attack on a motion to dismiss. In short, we thought the complaint, liberally construed, showed an acceptance and adoption by A. C. Milner in 1924 on behalf of the corporation, and that the contract was not fatally defective on its face for failure of consideration. We accordingly reversed and remanded that part of the court's judgment which dismissed the asserted cause of action against the corporation.

After remand the corporation answered, specifically denying the authority of Milner

to bind it to either the original contract or the subsequent letter of adoption, or that it ever consented, ratified or approved such instrument. It further specifically denied that the conveyance of the property to the corporation was caused in any manner by the original contract or that the corporation ever received any consideration from Knox for such conveyance.

On the trial of the issues thus joined it developed that subsequent to the letter of November 4, 1924, and on November 4, 1925, George Knox wrote to A. C. Milner calling attention to the original agreement and urging payment. On the following November 7, A. C. Milner replied acknowledging the obligation but informing Knox that the "net profit stage" contemplated by the contract "has not been reached." At the time both of the letters were written, A. C. Milner was president and director of the Milner Corporation and J. S. Milner was its secretary and director. The 1924 letter came to the attention of J. S. Milner soon after it was written but he took no action to repudiate it on behalf of the corporation. At this time the Milner brothers were the owners of a majority of the stock of the Milner Corporation.

A receiver was appointed for the Milner Corporation in 1941. No claim was filed by the plaintiffs in the receivership proceedings and no direct contact was made with the corporation or the Milners by any of the Knox family until the death of A. C. Milner in 1950 when further inquiry resulted in this litigation.

The trial court made extensive findings based primarily upon documentary evidence from which it concluded that the 1924 and 1925 Milner letters were unauthorized by the board of directors; were not intended for the benefit of the Milner Corporation and were entirely without consideration to it; that neither of the letters bound the corporation to pay the $25,000.00 or any other sum to the plaintiffs, or any of them. The court further concluded alternatively that even if the Milner letters, or either of them, constituted an acknowledgment binding upon the Milner Corporation, then the cause of action upon the obligation arose on August 31, 1929, when the corporation was held to have realized its first "net profits", and the cause of action, if any, is therefore barred by the statute of limitations. The court went on to hold that if the plaintiffs had any claim against the Milner Corporation arising out of the obligation of the contract or otherwise, it is barred for failure of the plaintiffs to file a claim against the receiver or the Milner Corporation during receivership; that the receiver was discharged and the assets of the receivership estate returned to the Milner Corporation free of any claim of the plaintiffs. And the court was also of the opinion that by failure and neglect to assert their claim against the corporation from 1925 to 1950 the plaintiffs were guilty of laches barring recovery on their claim now asserted.

On appeal it is conceded that A. C. Milner had no actual authority to bind the corporation to the 1909 contract by his 1924 letter, but it is argued that the 1909 contract was intended for the benefit of the Milner Corporation and that it received consideration therefor. And it is suggested that the issue of consideration was resolved in favor of the plaintiffs on the former appeal. Indulging in factual inferences fairly deducible from the pleadings, we observed that if the 1909 contracts between A. C. Milner and Knox was related to the release of the bank's claim against the Stanley B. Milner estate and the corporation's acquisition of its property in the sense that Knox suffered a detriment and the corporation received a benefit or an advantage thereby, the contract was not barren of consideration even though no consideration passed directly from Knox to the corporation. But our indulgence in factual hypothesis fairly deducible from a liberal interpretation of the pleadings does not foreclose inquiry into the very issue the determination of which the case was remanded for trial.

On the trial of the case it developed that before releasing its claims against the Stanley B. Milner estate, Frank Knox, acting for the National Bank of the Republic, exacted a definite agreement from Truth A. Milner, the sole beneficiary and executrix

of the estate, to the effect that she would cause the Milner Corporation to be organized and all of the assets of the Milner Estate transferred to it, and would immediately execute promissory notes to the bank, payable six months from their respective dates with interest at 8% per annum; and in the event of the failure to do so, Truth A. Milner agreed to be personally liable for the amounts owing the bank by the estate. And on the same date the National Bank of the Republic by Frank Knox, its president, procured an agreement from Truth A. Milner and her three sons, A. C. (also known as Archibald), Clarence, and J. S. (also known as Jay), to the effect that in consideration of the release by the bank of its claims against the Stanley B. Milner estate the Milners, and each of them, bound themselves to sign any and all of the promissory notes from the Milner Corporation to the bank, either as sureties or guarantors at the bank's sole option.

The controversial Knox-Milner agreement was executed on the same date (March 16, 1909), and appellants argue that it was part and parcel of the whole transaction and is supported by the same consideration to the corporation, namely the release of the claims by the bank and the acquisition of the property of the estate by the corporation. The asserted theory is that A. C. Milner's contractual obligations to Knox obligated him to cause the corporation to be formed and the assets of his father's estate to be transferred to it. To that end he participated in the organization of the corporation as an incorporator and director and pledged his personal credit to the bank for the benefit of the corporation to enable the estate to be closed and the property to be transferred to the corporation; and that the corporation received the benefit of Milner's performance of his contractual obligations to Knox as a sort of third party beneficiary.

Of course, if the Knox-Milner contract was intended for the benefit of the corporation and the corporation actually received a benefit from the transaction, it may be estopped from denying its validity, Fletcher Cyclopedia Corporations, Vol. 2, § 773; provided, of course, it was not ultra vires,

Fletcher Cyclopedia Corporation, Vol. 1, § 208, Page 691.

It is not inconceivable that the corporation might have derived some legitimate benefit from the Knox-Milner contract. Viewed as an inducement for president Knox to cause the bank to release the claims in order that the corporation might be organized and the assets of the estate transferred to it, its performance might have been sufficient to constitute a detriment to Knox and a valid consideration to the corporation. But the record is wholly barren of any facts to support that inference. Indeed the facts point the other way. In the first place, by other binding instruments A. C. Milner had personally obligated himself to cause the corporation to be organized, the assets transferred to it, and had pledged his personal credit to that end. In the second place, Truth A. Milner was the sole beneficiary and legatee of the Stanley B. Milner estate, and as such had obligated herself to cause the corporation to be organized and the assets of the estate transferred, and had pledged her personal credit along with A. C. Milner and his brothers to guarantee the performance of the contract. When she learned of the Knox-Milner contract carrying with it an obligation on the part of the corporation, she repudiated it. And it is significant that although as president of the bank, Frank Knox was careful to require the personal pledge of all the Milner family for the performance of the contract between them and the bank, he never at any time sought the ratification or approval of his contract with A. C. Milner. In any event, if he did, it was refused.

It is sufficiently plain that the bank's claims against the Stanley B. Milner estate were released, the estate closed, and the assets transferred to the corporation, all in accordance with the contract between the Milners and the bank, and that the trial court was justified in concluding that the Knox-Milner contract was not made for the benefit of the corporation and that it received no consideration or benefits by its execution.

It is suggested that J. S. Milner's knowledge of the A. C. Milner letter of 1924 on

behalf of the corporation is imputed to the corporation and that with such knowledge it became the duty of the corporation to repudiate A. C. Milner's asserted authority within a reasonable time at the risk of being bound thereby.

 It is, of course, true that a corporation can act only through its officers and agents and that knowledge of the officers is generally imputed to the corporation. Fletcher Cyclopedia Corporation, Vol. 2, § 790, pp. 20–26. And if a corporation with knowledge of facts upon which it is required to act fails to disaffirm, a ratification may be implied, or it may be estopped to deny ratification. See Fletcher, Vol. 2, § 769, pp. 814–15; Carlquist v. Quayle, 62 Utah 266, 218 P. 729.

But the corporation cannot be held to have ratified a contract or act which it had no authority in the first place to make or do. Fletcher, Vol. 2, § 755, pp. 778–779. And having decided that the corporation received no consideration or benefits from the 1909 contract, it was powerless to make it, and by the same token powerless to ratify it. But even so, if knowledge of J. S. Milner, as one of the directors, is knowledge of the corporation on which the corporation must act at the risk of being bound by silence, certainly the knowledge of A. C. Milner, the president, who wrote the letters would be imputable to the corporation, and its silence with respect thereto equally binding, although it was never formally brought to the attention of the board. We do not think J. S. Milner bound the corporation by his silence any more than A. C. Milner bound it by his letters of adoption; and there is no contention that the corporation is bound by A. C. Milner's letters without formal ratification. The argument falls by the weight of its statement.

Having decided that the 1909 contract has no binding effect upon the corporation, we have no occasion to consider the question of net profits under it for the purpose of applying the statute of limitations or laches.

After the judgment dismissing the claim against the Milner Corporation was reversed and remanded and the corporation answered denying Milner's authority, plaintiffs moved to amend their complaint against Milner's executor to assert a cause of action for a breach of a warranty of authority which allegedly did not accrue until they learned of the denial of authority. The court denied the motion to amend and the Knoxes have perfected an appeal from that order.

The claims against the Milner Corporation and A. C. Milner's executor were separate and independent, and the reversal of the judgment dismissing the claim against the Milner Corporation did not affect the finality of the affirmance of the judgment of dismissal as to the claim against Milner's executor. Upon affirmance, the judgment dismissing the claim against A. C. Milner's executor became final and amendments to the pleadings were thereafter governed by Title 28 U.S.C.A., Federal Rules Civil Procedure, Rules 59 and 60. The motion to amend the complaint was therefore not entertainable until relief was granted from the judgment by appropriate application under Rules 59 or 60. No attempt was made to vacate or set aside the judgment on any ground, and the judgment of the court must therefore be affirmed.